## Bowser *versus* Cravener *et al.*

1. In an article for the sale of land no consideration was mentioned : it was not therefore void ; the consideration might be shown by parol.

2. An entry and improvements were made under a contract of sale ; the purchaser acquired an interest which would be the subject of liens and sales on execution, and would require to be conveyed in writing or sold and delivered in such a way as to take it out of the Statute of Frauds.

3. The declarations of a vendee, after entry and valuable improvements, that he would throw up his article and hold as tenant to his vendor, his possession continuing as before, are insufficient to divest his interest.

4. The certificate of a magistrate to an acknowledgment setting forth that he was " Magistrate in the chief office of said town of Carlo, in the county of Carlo, Ireland," and signed " E. Butler, sovereign of Carlo, Ireland," with the seal of the town affixed, was sufficient to entitle the instrument to be recorded.

5. A deed thirty years old, where there is possession under it, is regarded as an ancient deed, and proves itself.

6. Recitals in ancient deeds are presumptive evidence of pedigree where an adverse title by inheritance is set up under the same ancestor, though the land in the deed is the subject of controversy.

October 31st and November 1st 1867. Before THOMPSON, STRONG, READ and AGNEW, JJ. WOODWARD, C. J., absent.

Error to the Court of Common Pleas of *Armstrong county :* No. 6, to October and November Term 1867.

This was an action of ejectment, by John S. Cravener against David S. Bowser and others, for 100 acres of land in Armstrong

[Bowser v. Cravener.]

county : service of the writ was accepted January 23d 1864. The plaintiff claimed under the original warrantee.

On the trial, at a special court, before Campbell, P. J., of the 18th district, the plaintiff gave in evidence an official survey of October 18th 1785, of 201 acres, being depreciation tract No. 280 ; and patent October 4th 1786, to Richard Freeman, for the same tract. He then offered a power of attorney to James Stewart from Simon Freeman and others, recited in it to be the brothers and sisters of Richard Freeman, dated September 16th 1830. The certificate of acknowledgment is as follows :—

" Town of Carlo, to wit : Be it remembered that on this 16th day of September, in the year of our Lord 1830, personally came and appeared before me, E. Butler, Esq., magistrate in the chief office of said town of Carlo, in the county of Carlo, Ireland, Simon Freeman, &c., the persons mentioned in the above or foregoing letter of attorney, and acknowledged said letter of attorney to be their and each of their acts and deed, and desired same to be recorded as such, &c. In testimony whereof I have hereunto put my hand and seal, and caused the seal of said town to be affixed, the day and year first before written.

" E. BUTLER, Sovereign of Carlo, Ireland," }
             (with the official seal).          }

The power of attorney was recorded in Armstrong county, March 3d 1831. This offer was objected to by the defendants, because the instrument was not properly acknowledged, and because the recitals were not evidence. The evidence was admitted and a bill of exceptions sealed. The plaintiff then offered in evidence a deed dated February 28th 1831, from Simon Freeman and others (by name), by their attorney in fact James Stewart, to Anthony Cravener, for the tract above mentioned. The deed recited that the grantors were " heirs at law of Richard Freeman, late of Washington City," &c. This deed was recorded March 3d 1831.

This was objected to because it was not properly acknowledged, and because there was no proof that the grantors were the heirs of Richard Freeman. The evidence was admitted, and a bill of exceptions sealed. The land in dispute is the " south half" of the Freeman tract. Anthony Cravener died about 1848, leaving two sons, Anthony and John S. Cravener, the plaintiff; Anthony released his interest to the plaintiff, January 8th 1864.

Anthony, the father, was living on the north half in 1845 and long before, and was then building a mill on the south half; the foundation was stone, with a log mill-house. The line between the two parts was made for Samuel Bowser in 1844. Slate Lick creek and Glade run meet on the north part of the tract. The defendants claimed under Samuel Bowser, and gave evidence

that Samuel Bowser lived at the falls of Glade run, on the land in dispute, in 1805, and until 1816 or 1817, and had a small cabin and 4 or 5 acres cleared. Whilst there he executed the following instrument signed but not sealed by him :—

" September the 7th in the 1816. Herein agreed upon between Samuel Bowser and David Flanner. Samuel Bowser doth sell to David Flanner his improvement, and Samuel Bowser is to give up his settlement against the 1st of May next, and the half of the survey where he pleases to have it. Hereunto doth set our hand and seal."

Flanner went on to this improvement when Bowser left. Burnheimer and Toy went on to the north part under Bowser ; Toy in 1825. Whilst he was there, Bowser told him he had sold to Cravener. Toy stayed under Cravener till 1832, when he left ; Flanner was then on the south part, claimed up to the run as the division-line and had 15 or 20 acres cleared. They gave evidence also that Cravener, who was a single man, about 1831 or 1832, went into the house with Flanner as a boarder ; that Flanner left about that time, and Cravener remained after Flanner left ; also, that Flanner had declared that he was to pay Bowser a share out of " the fields" as rent ; that Cravener came there as a steady resident in 1833, cleared in that year and the next, cut logs for the mill, and planted trees ; that he declared that he had a foreigner's title, and wanted to go in with Flanner to get possession ; he claimed that he had bought the whole tract from Bowser : there was other evidence of his declarations that he had bought half the tract of Bowser, and that the run was the line. They also gave in evidence from the notes of Mr. Phelps, the testimony of David Flanner, given in a former trial of the case, June 23d 1848 ; he then said that he had cleared about 15 acres, and built a house and stable on the tract after he bought from Bowser ; that after the controversy between Bowser and Cravener about the land, he threw up the old article and gave up the land to Bowser ; that Bowser told him he might stay on if he pleased— there were 8 or 9 acres he might have, and give Bowser one-third. The defendants further gave in evidence the record of an ejectment to September Term 1850, by Samuel Bowser against the plaintiff and others, for 112 acres 12 perches of land, and verdict for the plaintiff for the land south of Slate Lick, and west of Glade run,—24th June 1852, judgment ; 13th July 1852, writ of error filed ; 25th November 1852, record returned, judgment affirmed ; habere facias to No. 43, March Term 1853 ; possession February 11th 1853. Also assessments in the name of Bowser for 200 acres from 1807 until 1817, and for 100 acres from that time to 1835.

The plaintiff, in rebuttal, gave in evidence, under objection and

[Bowser *v.* Cravener.]

exception, the deposition of Hon. Joseph Buffington, taken November 6th 1866, with the papers attached, as follows:—

"I wrote this article of agreement now exhibited to me and marked 'J. B.' on the margin; it is rather in the form of a conveyance; it was signed by David Flanner and witnessed by A. J. Faulk; the case of Bowser *v.* Cravener had been tried in the Common Pleas of this county, and carrried up to the Supreme Court, and there resulted in favor of Cravener; I returned home on Monday, I think after the argument, and believing that the judgment would be reversed, in consultation with my colleague, Mr. Johnston, we concluded to send for Cravener and David Flanner: they came to town, I believe, on the next day, and upon inquiry we ascertained that Flanner signed some paper at the instance of David Bowser and Daniel Slagle; he, Flanner, stated at the time, that he had not transferred his interest in the property, that he had merely signed the old article of agreement at the instance of David Bowser and Daniel Slagle; a full and accurate account of that interview was taken by me in my handwriting, as per a statement hereto attached marked 'B,' signed by David Flanner, and to which I am a witness; upon hearing that statement, Mr. Johnston and myself advised Flanner to execute a conveyance to Cravener for the land in dispute, for which Cravener agreed to pay him $50; in pursuance of that I wrote the conveyance from Flanner to Cravener, as first above mentioned, hereto attached, marked 'A;' it was duly executed and delivered; I was present and saw the consideration-money, $50, paid; I told Flanner upon what grounds the Supreme Court had reversed the judgment, and Mr. Johnston and myself explained to him fully his relationship to the title to the land before he made the conveyance to Cravener."

Paper marked "B."

"David Flanner states:—On Tuesday, October 27th 1846, David Bowser and Daniel Slagle called at his house; I asked them if they were going to stay any time; they said not—that they had no notion of staying—that they had the old article along and wanted me to sign it; that if I would not sign it Samuel Bowser would lose the suit; it was just coming on that week, this same week now, that there was about $350 costs on it, and if their father would lose it he would not be worth one cent; they said if they would gain the suit they would give me $15, if not, they would give nothing; they did not give me anything; they said they wanted nothing but for me to sign the old article; they read old article; they read nothing but the old article; I asked them particularly if there was anything but the old article, and they said not; my name was written to it when they came there, and I had nothing to do but to put my mark to it; my son Elijah was present, and I told him to pay particular attention; I told them there

[Bowser *v.* Cravener.]

might be some danger of my signing it, and they said. they would keep me indemnified ; that they would have to have it in town before 1 o'clock ; that Mr. Phelps must have it in Pittsburg ; that the suit was just coming on for trial; there was no new writing that I saw on it; if there had been anything new I would not have signed it ; I asked if it was just the old article they wanted me to sign : they said yes, that was all.

"October 29th 1846.  
"Witness,  
"JOSEPH BUFFINGTON."  

         his  
"DAVID X FLANNER."  
       mark.

They gave in evidence also the article, D. Flanner to Anthony Cravener, proved by Judge Buffington, viz. : —

"This indenture made the 29th day of October, in the year of our Lord, 1846, between David Flanner of the one part, and Anthony Cravener of the other part, witnesseth, that the said David Flanner, for and in consideration of the sum of $50, &c., * * * hath and by these presents doth grant, &c., * * * to the said Anthony Cravener, his heirs and assigns, all the right, title, interest and claim, of him the said David Flanner, of, in, to, and out of, a certain piece of land, situate in Franklin township, Armstrong county, containing 100 acres, more or less ; being the same piece of land which the said Flanner bought of Samuel Bowser, adjoining lands of the said Anthony Cravener, and which said land is now in the possession of the said Anthony, being the same land which is now in dispute between Samuel Bowser and Anthony Cravener. And the said David Flanner having yielded up the said land to the said Cravener, by parol agreement, some ten or twelve years ago, hereby confirms and ratifies that contract, and the right thereby yielded and given to the said Cravener."

Also, the deposition of David Flanner, taken February 12th 1864. He testified that Cravener came to the premises and lived with him about thirty years before ; set apple trees, and declared that he had bought the whole tract from him ; that he cut timber for his mill on both sides of the tract. He further testified that Bowser's son and son-in-law came to him about the time the case was in the Supreme Court, and told him his name was above in the old article and should be below, and wanted him to put it below ; on his hesitating, they said their father would give him $15 to do it ; said if he did not do it their father would lose the land ; they did not tell him he was selling the land, if they had he would not have signed it. On cross-examination he testified that he had made improvements on the land, and had paid $15 of the purchase-money ; that when called upon and sued for the balance he threw up the article ; that he never agreed to pay rent to Bowser and had never paid any.

The plaintiffs also offered the deposition of William Noble, taken 8th of February 1845, said to have been read in.a former

[Bowser *v.* Cravener.]

trial between the predecessors of the same parties for the same land. It was objected to for want of notice and because not identified. E. Buffington, Esq., who assisted at the former trial, testified that his notes showed that a deposition was offered, that proof of service of notice had been made by a witness now dead; that he could not say whether the deposition was read or not; that Noble's deposition was read. There was other evidence on this point, more positively identifying this as the deposition. The court received the deposition and sealed a bill of exceptions.

Noble and other witnesses testified to declarations by Samuel Bowser that he had sold the whole tract to Anthony Cravener.

The defendants' points and the answers of the court were as follows :—

1. There being no consideration expressed in the contract of 7th of September 1816, of Bowser to Flanner, and none shown in the evidence, it was on the part of Bowser a mere voluntary engagement without any equivalent, and is not enforcible at law.

" We answer, that there is no consideration mentioned in the old article of September 7th 1816. Whether any consideration has been shown by the evidence is referred to the jury; but the defendants themselves have given evidence that Flanner gave up his possession under that contract because he was unable to pay the purchase-money, but if there was no consideration proven, if Flanner entered and made valuable improvements upon the faith of that agreement, he would still have an interest that could be enforced."

2. The contract above mentioned was executory, and being such, might be rescinded by parol; and if the jury believe from the evidence that the agreement was delivered up to Bowser by Flanner, and that subsequently Flanner left the land and abandoned all claim to it, there is sufficient evidence of a rescission of said contract, and any subsequent conveyance made by Flanner would be void.

" We answer this point in the negative ; the loose declarations of Flanner, as to changing his possession from a purchaser to a tenant, are insufficient to establish the relation of landlord and tenant."

3. If the jury believe from the evidence that Flanner took possession of the land in dispute under the contract of 7th of September 1816, and afterwards attorned to Bowser as his landlord, and agreed to pay him rent for the use of the place, or fixed upon himself any other character than that under which he entered, he thereby abandoned his equities under said contract, and his possession is referred to his new agreement and would enure to the benefit of Bowser; and if the jury believe from the evidence that Bowser and Flanner together held adverse possession for twenty-one years, then the plaintiff cannot recover.

[Bowser *v*. Cravener.]

Answer: "If he entered in 1816 as a purchaser under the contract of that date he could only become a tenant of Bowser by a conveyance good under the statutes of fraud and perjury, a parol surrender of the articles and possession alone would not divest his title, and therefore the possession of Cravener under Flanner would not enure to Bowser unless under the agreement of 1846. If Bowser and Flanner had the adverse, exclusive and continued possession of the whole land for twenty-one years, it would confer a good title against all the world."

5. If the jury believe from the evidence that Anthony Cravener went into the house of Flanner on the premises and became a boarder in his family, it was not such an entry as would justify the possession of Flanner, or suspend the running of the Statute of Limitations, although he might be the holder of the legal title; until he did some act indicative of his intention to claim the possession, or declare that he entered for the purpose of taking possession under his title, and if the possession of Bowser and his tenants to that of Flanner was exclusive, adverse and continued for twenty-one years before such an entry by Cravener, the Statute of Limitations would be a complete bar to the plaintiff's right to recover in this action.

"We answer that a mere casual entry of the holder of a legal title would not stop the running of the statute, but as soon as done with a claim of right and exercising act of ownership, it would suspend the running of the statute. The balance of this point is answered in the affirmative.

The verdict was for the plaintiff.

The defendants took a writ of error.

The errors assigned were the answers of the court to their points, and the admission of the evidence contained in the several bills of exception.

*D. Phelps* and *D. Barclay*, for plaintiffs in error, cited Shorb *v*. Shultz, 7 Wright 207; Jones *v*. Wood, 4 Harris 25; Sartwell *v*. Wilcox, 8 Id. 117; Soles *v*. Hickman, Id. 183; Boyce *v*. McCulloch, 3 W. & S. 429; Goucher *v*. Martin, 9 Watts 106; Lauer *v*. Lee, 6 Wright 165; Peebles *v*. Reading, 8 S. & R. 493; Henderson *v*. Hays, 2 Watts 152; Overfield *v*. Christie, 7 S. & R. 177; Hughes *v*. Pickering, 2 Harris 297; 2 Greenl. Ev., § 298; Garvey *v*. Hibbert, 1 Jac. & W. 180; Galbraith *v*. Green, 13 S. & R. 92; Murphy *v*. Lloyd, 3 Wh. 538; Meals *v*. Brandon, 4 Harris 220; Ferguson *v*. Staver, 9 Casey 411; Hammer *v*. McEldowney, 10 Wright 334.

*J. Boggs* and *E. S. Golden*, for defendant in error, cited Cravener *v*. Bowser, 4 Barr 259; Goucher *v*. Martin, 9 Watts 106; Smith *v*. Patton, 1 S. & R. 80; Bassler *v*. Niesly, 2 Id. 355;

[Bowser *v.* Cravener.]

George *v.* Bartoner, 7 Watts 530; Colt *v.* Selden, 5 Id. 525; Lowry *v.* Mehaffy, 10 Id. 387; Arnold *v.* Cessna, 1 Casey 43; Dixon *v.* Oliver, 5 Watts 512; Acts of April 3d 1840, § 1, Purd. 313, pl. 20, Pamph. L. 233; 1705, § 2, 1 Sm. L. 69; Milligan *v.* Dixon, 1 Pet. C. C. 433; Blythe *v.* Richards, 10 S. & R. 261; Costen's Appeal, 1 Harris 296; Stockbridge *v.* West Stockbridge, 14 Mass. 257; Green *v.* Chelsea, 24 Pick. 71; Doe *v.* Phelps, 9 Johns. 169; Doe *v.* Campbell, 10 Id. 475; Little *v.* Pallister, 4 Green 209; Paxton *v.* Price, 1 Yeates 500; Act of March 14th 1850, § 2, Purd. 67, pl. 5, Pamph. L. 195; Garrigues *v.* Harris, 5 Harris 344; Scott *v.* Baker, 1 Wright 330; Peterson *v.* Speer, 5 Casey 479; McCaskey *v.* Graff, 11 Harris 326; Stauffer *v.* Young, 3 Wright 455; Steward *v.* Richardson, 2 Yeates 89; Rhine *v.* Robinson, 3 Casey 35; Voris *v.* Smith, 13 S. & R. 334; Gibson *v.* Gibson, 8 Harris 11; Moore *v.* Pearson, 6 W. & S. 51.

The opinion of the court was delivered, January 7th 1868, by

THOMPSON, C. J.—The article of agreement of Samuel Bowser, deceased, the ancestor of the plaintiffs in error, with David Flanner, dated September 7th 1816, was, it must be admitted, a very informal instrument; but it was a contract for the sale of one-half the tract on which the vendor then resided, including his settlement, and it was signed by him. The possession was taken by Flanner pursuant to this contract, and the tract divided between the parties, Flanner to have that portion of it south of Slate Lick run, and Bowser all north of it. About this there appears never to have been any difficulty between the parties or those claiming under them.

This informal article contains no stipulation in regard to the purchase-money which Flanner was to pay, and the court was asked to charge the jury in the defendant's 1st point, that it was void for that reason; which was equivalent to an assertion that the consideration might not be shown by parol. This the learned judge refused to do. It would have been serious error if he had not so refused.

The written contract sets forth a sale, and to prove what the consideration was, did not contradict, but accorded with its terms: 1 Penna. R. 486; 3 Wright 351; 7 W. & S. 394; 12 Wright 491. It is true, in most of these cases, the proof offered was to show other and additional considerations to those expressed in the deeds, but that does not change the principle. Here there was a sale, but *no* consideration mentioned. It did not contradict the agreement to show that there was a consideration. There was testimony on the subject of the consideration which was properly left to the jury on the point.

That portion of the answer to the defendant's 1st point which instructed the jury, "that if Flanner had entered and made

valuable improvements upon the faith of the contract, he would have an interest that could be enforced," is complained of.

When this case was here before (Cravener *v.* Bowser, 4 Barr 259), on this very point the court said, "by the article of agreement already referred to, between Bowser and Flanner, the latter acquired an estate in the land. He entered in pursuance of the article, and made improvements, and held it sixteen or seventeen years. This estate he could not divest or alienate without a contract in writing, unless the transaction was within the saving of some of the exceptions of the statute; that, however, is not pretended." The court could not well have charged other than it did under these expressed views of the effect of improvements. And certainly it would be difficult to show wherein the principle announced was an error, in view of the fact, that the entry and improvements were made under a contract of sale. To suppose that by valuable improvements a party acquires no equity, is contradicted by every day's experience, as well as by the cases. They often amount to more than the original purchase-money, before the purchase-money is paid, and are such an interest in land as to be the subject of liens and sale on execution. Such an interest or equity would require to be conveyed by writing, or sold and delivered in such way as to take it out of the operation of the Statute of Frauds and Perjuries. Numerous cases show this. We see no error, therefore, in any part of the answer of the court to the defendant's 1st point.

2. There was no error on the part of the court in refusing to charge in answer to the defendant's 2d point, that because the contract between Bowser and Cravener was executory, therefore it might be rescinded by parol. To hold such doctrine in a case where there had been valuable improvements made, under a long-continued possession, would not only be to hold that valuable interests in real estate might be transferred without writing, in defiance of the statute, but it would be to sanction a method by which creditors would be sure to be defrauded who had trusted to the fruits of their debtors' labor invested in the soil he was improving and enhancing in value. Such is not the law: 4 Barr 259, *supra.*

The balance of the answer to the point was just what it should have been in order to be consistent with the negation of the portion alluded to. The declarations of Flanner about changing the nature of his possession, from that of a purchaser to that of a tenant, were certainly insufficient for any such purpose as they were offered for. Indeed, any mere declaration would fail altogether to have that effect.

3. We have anticipated all that is necessary to be said in answer to the 3d assignment of error. If it were true that Flanner entered under the article of agreement referred to, he

[Bowser v. Cravener.]

entered as a purchaser, and if he resided thereon for a number of years, and made valuable improvements on the land—valuable in reference to the times and circumstances of the country—his declarations that he would throw up his article, and thereafter hold as tenant to his vendor, could not have the effect of creating that relation, and are to be regarded as mere declarations, insufficient to divest his interest, his possession continuing after as before. Enough has been said on this point alone, to render unnecessary anything more special, excepting it might be to say, that the authorities cited on the point for the plaintiffs in error, in order to produce a reversal, viz. Lauer v. Lee, 6 Wright 165, Boyce v. McCulloch, 3 W. & S. 429, and Goucher v. Martin, 9 Watts 106, are very decidedly against the position assumed. The farthest they or either of them go, is to the extent of holding, that as between *vendor and vendee* there may be such a rescission by parol, accompanied by such acts in execution of it as would estop the vendee from claiming specific performance of the contract afterwards. There were no acts in execution of any alleged rescission shown or attempted to be shown in this case, and of course it is not within the principle. If these cases are authority for this principle, they go no further in the direction claimed by plaintiffs in error.

4. We see nothing of which the plaintiffs in error can justly complain in the answer of the court to their point on the subject of the Statute of Limitations. It was substantially affirmed—we need not dwell on it further.

5. The next error to be noticed is the exception to the admission of the power of attorney of the heirs of Richard Freeman, deceased, of the county and town of Carlo, Ireland, to James Stewart, agent, to sell and convey their interest in the tract of land of which that in dispute is part. It was a depreciation tract; a name or designation for certain lands north and west of the Allegheny and Ohio rivers, subject to be taken up and paid for in what was called by the Act of the 11th of December 1780 "depreciation certificates," which certificates grew out of the scale of depreciation, by which Continental money was estimated in gold, and which had been paid to officers and soldiers of the Pennsylvania line in the Revolution. Richard Freeman, the alleged kinsman of the appointors in the power of attorney, was the owner of a tract of land granted upon these depreciation certificates, the tract now partially in dispute.

The objection to the power of attorney was that it was not sufficiently acknowledged to admit of being recorded under our recording acts; and secondly, because the recitals in it were not evidence of heirship.

The instrument was in sufficient form, and it was acknowledged before E. Butler, who subscribed himself " E. Butler, Sovereign

of Carlo, Ireland," and was attested by the seal of the town. His certificate sets forth his official character to be a " magistrate in the chief office of said town of Carlo, in the county of Carlo, Ireland." This certificate brings the acknowledgment within the provisions of the 2d section of the Act of 1705, 1 Sm. L. 69, and the decisions upon it. Tilghman, C. J., in Blythe *v.* Richards, 10 S. & R. 265, said : " So powers of attorney executed beyond sea for the sale of lands in Pennsylvania, have been held good, on proof of their having been acknowledged before the mayor of a city, although our Act of Assembly of 1705 requires proof by the oaths or affirmations of two or more of the witnesses." And see 1 Pet. C. C. 433. The 4th section of the Act of 28th May 1715 extended this authority to the mayor, chief magistrate or officer, of the cities, towns or places where such conveyances are made. The Act of 3d of April 1840 dispenses with the proof of the seal, where the acknowledgment of the instrument is according to the existing laws of the commonwealth, although the official seal must be attached. We think, therefore, from this history of what was done, the execution was sufficient to entitle the power of attorney to be recorded, and consequently it was evidence.

The next question is, were the recitals in it evidence of heirship, or any evidence of it? In this state a deed is regarded as an ancient deed after thirty years, and in some circumstances proves itself. Certainly it does so where there is possession under it. That was the case in regard to a portion of the tract out of which this controversy has arisen, and for the other part a portion of the time at least. It was on record and the foundation of the claim of Anthony Cravener from 1831, and continued so up to the trial of the case. But that is not a point of importance just now. It was an ancient deed—a power of attorney of record for upwards of thirty years. Was it evidence of pedigree? In Paxton *v.* Price, 1 Yeates 500, it was held that " recitals in a conveyance are evidence of pedigree ; the rules in general being much relaxed in this particular." So, in Little *v.* Pallister, 4 Greene (N. J. Rep.) 209, it is said : " recitals in ancient deeds are good presumptive evidence of pedigree, when an adverse title by inheritance has been set up under the same ancestor, even though the land conveyed by the deed is itself the subject of controversy." This is undoubtedly a reasonable rule in a case where the adverse claim, as in this case, ignores both the title and the heirship. It cannot matter much to the plaintiffs in error who the heirs are, for they deny their title altogether. We think this objection was not sound and that the power of attorney was properly evidence against both objections. It is unnecessary to consider what effect the Act of the 14th March 1850, confirming sales under powers of attorney defectively exe-

[Bowser *v.* Cravener.]

cuted, would have had, if any, in case the first objection to the former had prevailed, and we express no opinion on it.

The next assignment of error is to the admission in evidence of the deposition of the Hon. Joseph Buffington. We will not notice the objection urged in argument, but not made in the court below, that the "witness was in good health and resided in the county." If the fact be as stated by the counsel for the defendants in error, that at the time of trial he was absent in another county holding court, professional obligation, if not ordinary candor, it seems to us, ought to have dictated the propriety of stating this fact in connection with the objection, instead of leaving it to be inferred that the witness was in the very town where the trial was being had, and at the time it was going on.

But the objection to the matter of the deposition is more serious. It has appended to it and proved by the witness, an unsworn *ex parte* statement of David Flanner, signed by him on the 29th October 1846, in presence of the witness and drawn up by him. This statement of what took place between the narrator and David S. Bowser and Daniel Slagle, a son-in-law of Samuel Bowser, two of the defendants below, was to show fraud in these parties in procuring a transfer by Flanner of his interest to Samuel Bowser, in the land which he had formerly purchased from Bowser. These declarations had no relation to boundaries or the nature of Flanner's possession, but referred exclusively to what took place when a transfer was made to Bowser, through, as Flanner alleged, a fraud upon him. Such testimony was utterly incompetent. It was hearsay of the most objectionable kind, and should never have been offered. It is true that it is alleged that the fraudulent paper was given in evidence, although we see no trace of it in the testimony. This, however, is not wonderful, for the plaintiffs in error have only given what testimony suited them, and the defendants in error say they had not control of the paper. But whether it was in evidence or not, it could not be attacked by the declarations of the party whose interest it was to get rid of it.

Flanner was in full life, and his deposition was taken in the case, proving substantially the same facts contained in his declarations, as found in the testimony of Judge Buffington,—hence the more strange the offer. We cannot say the testimony was irrelevant and merely harmless. A charge of fraud such as it contained would, in a case in which there were any facts for the jury, be likely to be damaging. It is possible it did no harm, but it is very probable it did. This assignment of error, we think, is sustained and on account of it the judgment must be reversed and a new trial ordered.

The last assignment of error is to the admission of the deposition of William Noble. It had been taken during the pendency

[Bowser *v.* Cravener.]

of the former suit between the parties under whom the present litigants claim. The objection to its reception was that notice of the time and place of taking it was not proved. Also because not identified as the deposition then taken, and because not shown that the matter in dispute was the same as in the present controversy.

The court overruled the objections and admitted the testimony. The court were satisfied that the matter in controversy was the same when the deposition was taken as now. There is such a paucity of evidence on this point before us, we cannot say whether this was right or not—but I incline to think that that was made sufficiently apparent.

The proof of notice of the taking the deposition, the witness being dead who served the notice, was attempted to be supplied by proof at bar, of what he had testified about the service of notice on offering the deposition on the former trial. The notes of counsel were resorted to and proved, and from them it very clearly appeared that notice had been served and a deposition of William Noble read on this trial. If that was the same deposition now offered we think it was admissible. We should presume that the court were satisfied that the notice proved was sufficient under their rule on the subject of taking depositions. But it is not so clear that the deposition offered on the trial below was identical with that read on the former trial. It was incumbent on the plaintiff below to have cleared up that point if possible. We cannot say he did, and it is not necessary to say he did not, as the case goes back for another trial for other reasons than those alleged against this testimony, and it is not likely such a presentation of the testimony on this point can, or will, be allowed again to take place. Suffice it, that identification on a new trial will be as indispensable as the other requisites, to entitle the deposition to admission. For the reasons given on the preceding exception the

Judgment is reversed, and *venire de novo* is awarded.