FLINNER, APPELLANT, *v.* McVAY, RESPONDENT.

(No. 2,541.)

(Submitted June 18, 1908.  Decided June 25, 1908.)

[96 Pac. 340.]

*Real Property—Contract to Purchase—Transfer of Interest—*
*Statute of Frauds.*

Real Property—Contract for Sale of—How Transferable.
  1.   Where the creation of an interest must be evidenced by a writing, the transfer of that interest must likewise be so evidenced.
Same—Contract for Sale of—Oral Transfer—Invalidity.
  2.   F. entered into a written agreement with K. for the purchase of certain lands from the latter.  Thereafter F. executed a power of attorney to his son, empowering the latter to sell, assign and deliver the contract to defendant McV., on payment of $350.  The attorney in fact transferred the contract orally to defendant, at the same time delivering to him the contract.  K. thereafter refused to convey, and plaintiff brought suit to recover from defendant McV. the sum of $350.  The court granted a nonsuit.  *Held,* that the action of the court was correct, inasmuch as the interest acquired by plaintiff under his contract with K. constituted an equity in the lands in question, the transfer of which was a grant of an interest in real property and which, under Civil Code, section 2185, could only be made in writing; and that therefore the verbal transfer by the attorney in fact, even though accompanied by delivery of the contract, did not effect a legal transfer.
Things in Action—Oral Assignment—Sufficiency.
  3.   *Obiter:* Under Civil Code, section 1351, things in action, or rights arising out of obligations, are assignable, without a writing, in every case in which a writing is not expressly required by statute.  Nonassignability is the exception.

*Appeal from District Court, Gallatin County; W. R. C.*
*Stewart, Judge.*

ACTION by John Flinner against W. B. McVay for the purchase price of an assignment of a contract to sell land.  From a judgment of nonsuit and an order denying a new trial, plaintiff appeals.  Affirmed.

*Mr. Walter Aitken,* and *Mr. B. B. Law,* for Appellant.

The assignment of this contract was not an attempt to convey any interest in real estate, for at law an executory contract of sale is a mere agreement which does not affect the title.

(28 Am. & Eng. Ency. of Law, 1st ed., p. 105, sec. 8, and note 2.) And even in equity, if the contract as in this case, provides that a conveyance shall be made when the purchaser performs certain acts, the equitable title does not vest in him until he complies with this requirement. (*Chapell* v. *McKnight*, 108 Ill. 575.) Such a contract does not create even an equitable title. It is but an agreement that may ripen into an equitable title. When the purchaser performs all acts necessary to entitle him to a deed, he has an equitable title and may compel a conveyance. (Bishop's Equity, sec. 365.) And when a purchaser is in a position to compel a conveyance by a bill in chancery, he then holds the equitable title. Before that he only has a contract for a title when he performs his part of the agreement. (*Chapell* v. *McKnight, supra; Sutherland* v. *Parkins*, 75 Ill. 338; Warvelle's Vendors, p. 187, sec. 2.) So that the assignment of such a contract as that set out in the complaint was not an assignment of an interest in real estate, required by the statute of frauds to be in writing. It was an assignment of a mere right to acquire an interest in real estate.

*Messrs. Hartman & Hartman,* for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

It is alleged in the complaint herein that on August 7, 1906, the plaintiff and one W. P. Knowlton entered into a contract, of which the following is a copy:

· "Belgrade, Mont., Aug. 7th, 1906.
"This agreement made this day and date between W. P. Knowlton, of Belgrade, Mont., party of the first part, and John Flinner, of Leav., Kans., party of the second part.: W. P. Knowlton, party of the first part, agrees to sell and convey to John Flinner, party of the second part, all right and title to S. ½ of N. E. ¼ of Sec. 16, 80a.; S. ½ of N. ½ of Sec. 15, 160a.; S. ½ of Sec. 15, 320a.; N. W. ¼ Sec. 22, 160a.; and the West ½ of N. E. ¼ of Sec. 22, 80a—all located in Town. 2 N., R.

5 E., in Gallatin Co., Mont. Also all horses, cattle, harness, farm machinery and all other articles (except house furniture) upon above-named land for the sum of ($25,000) twenty-five thousand dollars. W. P. Knowlton, party of the first part, agrees to accept ($100) one hundred dollars as part payment, balance of ($24,900) twenty-four thousand nine hundred dollars to be paid on or before Nov. 1st, 1906, at which time W. P. Knowlton agrees to transfer to John Flinner a warranted deed and abstract with clear title to said land, also a clear title to all stock, etc.

> "W. P. KNOWLTON,
> "JOHN FLINNER."

It is further alleged that upon the signing and delivery of this contract plaintiff paid to Knowlton $100 in cash; that thereafter, on October 29, 1906, plaintiff, with the knowledge and consent of Knowlton, sold and delivered the contract and assigned all of his rights thereunder to defendant for a consideration of $350, which the defendant agreed to pay; that, relying upon the said sale and assignment of the contract and the promise of defendant, the plaintiff refrained from asserting any rights thereunder; that under and by virtue of the assignment, the land and other property to be conveyed by said Knowlton to plaintiff as in the contract specified, was by him conveyed to defendant, who thereby received the benefits which had accrued to plaintiff under the contract; and that defendant having failed to pay the said sum of $350, there is now due and owing to plaintiff from him said amount. Judgment is demanded for the same. The answer denies that the assignment was made as alleged, that the plaintiff by reason of it refrained from asserting his rights under the contract, that the defendant obtained a conveyance to himself of the property mentioned, and that there is due plaintiff, in consideration of the assignment, the sum of $350 or any other sum.

At the close of plaintiff's case the defendant moved for a nonsuit, which was granted, and judgment was entered for the defendant. Plaintiff has appealed from the judgment and an

order denying him a new trial. The grounds of the motion for nonsuit are, substantially: (1) That the evidence does not show that the plaintiff ever assigned his rights under the contract to defendant; (2) that the contract could not be assigned without the written consent of Knowlton, and the evidence does not show that such consent was given; (3) that on November 2, subsequent to the date of the alleged assignment, the plaintiff received the contract back from defendant and attempted to enforce it in his own behalf, and that the assignment, if made, was revoked; and (4) that there is no evidence tending to show that defendant obtained any conveyance from Knowlton of the property described in the contract. While the question presented by each of the grounds of the motion is submitted for decision, the principal contention is as to whether the facts show an assignment to defendant by plaintiff of his right under the contract. A solution of this question is, in our opinion, determinative of these appeals.

The plaintiff resides in the state of Kansas. The defendant and Knowlton reside in Gallatin county, some miles from Bozeman, the county seat. On October 21, a few days before the final payment was to be made under the contract, the defendant, having knowledge of it, approached plaintiff's son, William A. Flinner, who also resides in Gallatin county, and asked him if his father intended to take the Knowlton farm. Flinner replied that his father had not said much about the matter in his last letter, but that in a prior letter he had said that he had made arrangements for the money to enable him to do so. Then inquiry was made by defendant whether the father would sell his interest in the farm. This question Flinner could not answer. Thereupon defendant asked him to write to his father to conclude the purchase and to state to him that defendant would give him $250 for his bargain. Flinner then said he did not think his father would be willing to send out to Montana $24,900 to make final payment and then sell for so small a profit. An easier way, he said, would be for the defendant to buy the contract and have the conveyance made di-

rectly to himself. To this plan the defendant assented, offering to pay $250 besides the $100 already paid by the plaintiff. On the evening of the same day Flinner wrote to plaintiff to ascertain his wishes, as follows:

"Belgrade, Mont., October, 1906.

"Dear Father: Mr. Boyd McVay was here to day. He wants to buy the contract you have with Perry Knowlton for his farm. He offers $250 and your $100 back, making $350 in all. Now, if you want to sell for that small amount you can send me the contract and necessary papers and I will turn them over to Mr. McVay. Now you can do as you please about this, but my advice would be not to take this, and go ahead and buy the place yourself, because you can make more money out of it. Mr. McVay is very anxious for the place, and you might sell to him later on for a better price, but you will have to act pretty quick one way or the other as the time is getting close.

"From WILL."

To this letter the father replied:

"Leavenworth, Kan., Oct. 26th, 1906.

"Dear Son: Being I have sent the agreement and not signing it I hereby send power of attorney for you to execute in my place. I can get the $10,000 from the Wulfekhuler Bank any time, but if Mr. McVay will do as you say, namely the $100 and $250, he may have the Knowlton farm.

"Yours respectfully,

"JOHN FLINNER."

On receipt of this letter Flinner went to the home of the defendant, and, finding him there, went with him to see Knowlton. Flinner told Knowlton that his father had sold his interest to defendant, showing his father's letter and power of attorney. After reading them over, Knowlton said to defendant, "All right; I'll meet you at Bozeman on Thursday," that day being November 1. After leaving Knowlton, Flinner delivered the contract, his father's letter, and power of attorney to defendant. On the morning of November 1 defendant, while

on his way to Bozeman to meet Knowlton, met Flinner and inquired of him if he was going to Bozeman. Flinner told him that he was not unless it was necessary. Defendant said he did not think it necessary. Flinner then said that he would be in Belgrade (a village near by) until 5 o'clock in the afternoon and that, if wanted, he could be reached by telephone. Flinner heard nothing from the defendant until the next morning. Defendant then informed him that Knowlton refused to make the conveyance, giving no reason other than that "he did not have to." He thereupon returned the papers to Flinner, saying to him that he had better indorse his assignment on the contract, which he did, retaining it thereafter. During the conversation and after the papers had been returned to the possession of Flinner, the defendant told Flinner that if Knowlton would make the conveyance he would still pay the plaintiff $350, as he had agreed.

The foregoing is the substance of the statement of William Flinner on his examination in chief. Upon his cross-examination he stated, in substance, that defendant's proposition to him was to pay for the contract, if he could get the place. Elsewhere he stated that defendant was to pay his father $250 for his interest in the land; that he offered this for the bargain. Being asked directly: "Do you say now that you sold him the contract and it was understood distinctly between you that he was to buy the contract and paying $350 irrespective of whether Perry Knowlton would make the deed to him or not?" he replied, "Just as I said before; he said he would pay $350 if he got the place." The foregoing is all the testimony touching the terms of the contract.

It appears from other evidence that later in November the defendant entered into negotiations with Knowlton for a purchase of a portion of his lands. These negotiations resulted in a sale by him (Knowlton) to defendant of about seven hundred acres of land, including a portion of the lands described in the contract between the plaintiff and Knowlton, but no personal property. The power of attorney referred to was properly exe-

cuted and acknowledged, and authorized William A. Flinner, for and on behalf of John Flinner "to sell, assign and deliver the contract for purchase of land from Perry Knowlton."

It is difficult to gather from the statements of this witness whether defendant was to take an assignment of the contract at the price of $350, with the proviso that payment should be made only in case he obtained a conveyance from Knowlton, or whether he was to pay $350 absolutely for an assignment of Flinner's rights under the contract. Taking the most favorable view of the evidence and adopting the latter as the understanding and purpose of the parties, it fails to make out a *prima facie* case in favor of the plaintiff. Assuming that Knowlton's written assent to the assignment was not necessary in order to substitute defendant to all the plaintiff's rights, still the substitution was not legally made, because William A. Flinner did not execute the power granted by his father, so as to make it effective.

The interest acquired by the plaintiff under the contract was a right to have a conveyance of the land to himself. It was an equity in the land—a valuable right. The grant, assignment, or transfer of this character of interest, by whatever name the act of the parties may be called, is a grant of an interest in real property, and is not valid unless made in conformity with the requirements of the statute. (Civ. Code, sec. 2185.) The plaintiff, by tendering the final payment, would have been in position to demand and enforce a conveyance from Knowlton. William A. Flinner was armed with authority by the plaintiff to substitute defendant to this right, and thus clothe him with plaintiff's equity; yet, by failing to make the transfer in writing, he failed to put defendant in such a position that he could tender the payment and demand a conveyance. The verbal transfer, accompanied by a delivery of the contract, did not accomplish this purpose. Defendant, therefore, got nothing, even though it be conceded that both William A. Flinner and defendant were of the opinion—which no doubt was the fact— that the requirements of the law had been fully met.

While there is some diversity of opinion among the courts of the different states as to whether the statute applies to assignments of such contracts, it is the general rule, based, as we think, upon correct reasoning, that where the creation of an interest must be evidenced by a writing, the transfer of that interest must likewise be evidenced by writing. (*Arden* v. *Brown*, 4 Cranch C. C. 121, 1 Fed. Cas. No. 510, p. 1091; *Smith* v. *Clarke*, 7 Wis. 468; *Whitney* v. *State Bank*, 7 Wis. 520; *Abbott* v. *Baldwin*, 61 N. H. 583; *Wilkie* v. *Womble*, 90 N. C. 254; *Love* v. *Cobb*, 63 N. C. 324; *Bowser* v. *Cravener*, 56 Pa. 132; *Connor* v. *Tippett*, 57 Miss. 594; 20 Cyc. 219; Smith on the Law of Fraud, sec. 367.)

Counsel have devoted considerable space in their brief to a discussion of the assignable character of the contract. It is argued that it was assignable, and, since this is so, it could be assigned by mere delivery. The question here is not whether such contracts are assignable. That things in action, or rights arising out of obligations, are assignable is the general rule. (Civ. Code, sec. 1351.) Nonassignability is the exception. The transfer may be made without writing in every case in which a writing is not expressly required by statute. (Civ. Code, sec. 1450.) But section 2185, *supra,* is such express requirement, applicable to the right here involved.

We have assumed that the evidence justifies the conclusion that the result of the transaction was an attempted absolute sale, by the plaintiff to defendant, of his rights under the contract. There is a strong presumption, however, that the understanding was, that the stipulated price for the transfer was to be paid only upon the condition that the defendant secured the conveyance. This conclusion is justified by the fact that William A. Flinner stated on his cross-examination that this was the contract, and the fact that when the papers were delivered to the defendant, payment was not demanded. It also finds support in the fact that when the defendant ascertained that Knowlton would not make the conveyance to him, he delivered the papers to William A. Flinner, who received them

without objection. The fact that after the lapse of the contract defendant purchased from Knowlton a part of the lands covered by it is of no significance. Having failed to gain substitution to the rights of the plaintiff under the assignment, and after the contract of plaintiff with Knowlton had lapsed, defendant was at liberty to negotiate a purchase of the lands described in the contract, or any portion of them.

We are of the opinion that the court's action in sustaining the motion for nonsuit is justified upon the first ground. Such being the case, it is not necessary to discuss the questions raised by the other grounds.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SMITH concur.

Rehearing denied July 18, 1908.