PICCOLO ET AL., RESPONDENTS, *v.* TANAKA ET AL., DE-
FENDANTS; DAVIES REAL ESTATE CO., APPELLANT.

(No. 6,037.)

(Submitted January 5, 1927. Decided March 11, 1927.)

[253 Pac. 890.]

*Quieting Title—Vendor and Purchaser—Deeds—Recordation
of Instruments—Constructive Notice—Judgment Liens.*

Real Property—Record of Instruments—Interest not Disclosed by Rec-
ord not Subject to Lien of Docketed Judgment.
1.  Construing the provisions of section 9410, Revised Codes of
1921, with those of section 9424, *held,* that an interest in real
estate not disclosed of record is not subject to the lien of a
docketed judgment.

Same—Vendor and Purchaser—Deeds—Constructive Notice from What
Appears on Face of Deed.
2.  Wherever a purchaser of real property holds under a deed and
is obliged to make out his title through it, or through a series
of prior deeds, he will be held to have constructive notice of
every matter connected with or affecting the property which ap-
pears, either by description of parties, by recital, by reference
or otherwise, on the face of any deed which forms an essential
link in the chain of instruments through which he must derive
his title.

Same—Recording of Instruments—Constructive Notice to Whom.
3.  The record of an instrument is constructive notice to subse-
quent purchasers and encumbrancers only, and does not affect a
prior purchaser though he has not acquired the legal title nor
made full payment of the purchase price.

Same — Quieting Title — Contract of Sale — Recordation — Purchasers'
Title Held Superior to That of Holder of Judgment Against Sub-
sequent Vendee.
4.  In an action to quiet title it appeared that the owner, after
entering into a contract of sale thereof with plaintiffs, whereunder
payments were to be made in annual installments, and after as-
signing the contract to a bank to which he was indebted, gave
a warranty deed to the property to a third party for wages al-
leged to be due. Shortly thereafter the contract of sale was re-
corded. Plaintiffs had no knowledge of such deed and the third
party never made demand upon them for the installments as they
fell due, but left the country as did the vendor. The lands were
attached about two years after recording of the contract by a
creditor of the third party, with full knowledge of the prior
transactions, and bought in by him on execution sale. Later, and

2.  See 27 R. C. L. 715.
3.  See 23 R. C. L. 212.

before the deed to the third party was recorded, plaintiffs paid the assignee bank in full. *Held*, that the rights of plaintiffs were superior to those of the claimant under execution sale.

[1]. Judgments, 34 C. J., sec. 903, p. 593, n. 59.
[2] Vendor and Purchaser, 39 Cyc., p. 1713, n. 82.
[3, 4] Appeal and Error, 4 C. J., sec. 2662, p. 732, n. 86. Judgments, 34 C. J., sec. 925, p. 605, n. 4; sec. 933, p. 614, n. 79, 80. Vendor and Purchaser, 39 Cyc., p. 1665, n. 31 New; p. 1722, n. 37, 38, 39.

*Appeal from District Court, Yellowstone County; Robert C. Stong, Judge.*

ACTION by Gabriel Piccolo and another against Hugh Tanaka, the Davies Real Estate Company, and others. From judgment for plaintiffs, second named defendant appeals. Affirmed.

*Messrs. Wood & Cook*, for Appellant, submitted an original and a supplemental brief; *Mr. Sterling M. Wood* argued the cause orally.

*Mr. William V. Beers*, for Respondents, submitted an original and a supplemental brief, and argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

On motion for a rehearing, the original opinion rendered January 27, 1927, is withdrawn, and this one ordered substituted. The result reached is the same as before.

This is an action to quiet title to certain real estate in Yellowstone county. Upon issue joined by an answer filed in the action by the defendants T. Ogoshi and Davies Real Estate Company, and after reply thereto, the cause was tried to the court without a jury. After the submission of all evidence offered by the parties, the case was taken under advisement by the court, and later the court made and filed its findings of fact and conclusions of law in favor of the plaintiffs, upon which judgment was regularly entered. The appeal is from the judgment.

The only question presented necessary for decision by the appellant's assignment of errors, is whether the evidence is sufficient to support the judgment.

From the undisputed testimony it appears that on January 28, 1921, one Hugh Tanaka, a single man, was the owner of the real estate involved. On that date he entered into a written contract with the plaintiffs for the sale of such land to them, whereby they were to pay therefor the sum of $3,500; $800 of the agreed purchase price was paid down at the time of the execution of the contract, in accordance with the terms thereof, it being agreed that the balance should be paid in installments covering a term of years, with interest on the deferred payments at the rate of six per cent per annum, and upon final payment a deed was to be executed conveying title to the plaintiffs. This contract was filed for record, and recorded on April 3, 1922. Immediately upon the execution of the contract, the plaintiffs moved upon the land, and have ever since resided thereon, and engaged in farming it. On March 16, 1921, Tanaka, by a written instrument, assigned all of his rights under the contract to the Security Trust & Savings Bank as security for the payment of his indebtedness to that bank, which was greater in amount than the total sum due from the Piccolos. This assignment was never recorded, and it does not appear that the transaction was known to any of the parties other than Tanaka, the plaintiffs and the bank, prior to the trial. Tanaka was indebted to Frank T. Uyeda for labor, and on October 12, 1921, in adjustment of the indebtedness, deeded the land involved to Uyeda, so that the latter would be able to collect the balance due from the plaintiffs on their contract for the purchase of the land, and apply the same in satisfaction of the indebtedness. This deed was placed on record April 4, 1925, prior to the date of the commencement of this action. The sale of the land to the Piccolos was negotiated through R. M. Davies, president of the appellant company, the first payment being made to him at the time of the execution of the contract, and the signatures

to the contract were witnessed by him. The dealings between Tanaka and Uyeda were also made through Davies. With respect thereto Davies says that he took part in the negotiations leading up to the execution of a deed by Tanaka to Uyeda, and was present when it was signed and delivered. He testified: "Q. You say you were present when this deed was executed and delivered? A. Absolutely; I acknowledged it as notary public. Q. Was there any discussion between the parties, or conversation, at the time before the deed was signed? A. Yes, sir. Q. Was any representation made by Mr. Tanaka at that time about the fact that a contract for the sale of some of the property covered by this deed had been made with Mr. and Mrs. Piccolo? A. Sure there was. Q. Was any effort made to find that contract or to refer to it at that time? A. Yes, sir. I said, 'Hugh, have you got the contract there?' He says, 'No.' He says, 'You have got it.' So I immediately went into my safe where I kept all of his papers, and I looked through them, and I said, 'I haven't got it, Hugh; if it is not in here, you must have got it.' Q. Was any arrangement made at that time under which Mr. Uyeda was to get the benefit, if any, from this Piccolo contract? A. Yes. Q. What was that arrangement? A. I figured out the equity, in trying to arrive at the settlement— I figured out about what equity there was under the contract, that is about what was coming from the contract. Q. What was the arrangement made? A. That money was to go to Frank Uyeda. Q. What money? A. The balance due under the contract. Q. That was thoroughly well discussed at the time? A. Absolutely; right there."

On or about January 29, 1924, Tanaka and Uyeda left Montana for parts unknown, and have never been seen nor heard of since, and their whereabouts is not known. On February 29, 1924, the land was attached in an action brought by the appellant company against Frank T. Uyeda to recover commissions on the transaction whereby Tanaka deeded the land to Uyeda. Davies testified: "Q. What was the purpose of this

suit; what were you trying to do? A. To recover my commission and stuff I had coming from Frank Uyeda. Q. Was that on this particular deal with Mr. Tanaka, commissions on that deal? A. Yes, sir." That action was prosecuted to final judgment, regularly entered on April 17, 1924, and the land was sold at execution sale, on March 7, 1925, to the appellant for the sum of $2,500. Sheriff's certificate of sale of the lands to the appellant was thereupon regularly issued. On November 28, 1924, the bank collected from the Piccolos the sum of $1,350 of the amount then due on their contract to purchase the land, approximately $2,600, and received from the bank a receipt acknowledging full payment of the amount due on the contract, wherein it is recited: "This bank agrees to start at once and obtain a proper deed conveying the said land under the above described contract." And it appears that Tanaka is still indebted to the bank. The appellant claims prior and superior right to the land as the successor to the rights of Uyeda by virtue of the sheriff's certificate of sale of the property on execution.

The following chronological arrangement of dates will be aidful in arriving at a proper determination of the legal rights of the plaintiffs and the appellant, viz.:

1. Tanaka contract with Piccolos .........January 28, 1921
2. Tanaka assignment of contract to bank ...March 16, 1921
3. Tanaka deed to Uyeda ...............October 12, 1921
4. Tanaka contract with Piccolos recorded ....April 3, 1922
5. Tanaka and Uyeda departed ..........January 29, 1924
6. Davies attachment .................February 29, 1924
7. Davies judgment .......................April 17, 1924
8. Piccolos paid bank .................November 28, 1924
9. Certificate sheriff's sale to Davies ........March 7, 1925
10. Tanaka deed to Uyeda recorded ...........April 4, 1925
11. This action instituted ................September 5, 1925

The court found that on January 28, 1921, Hugh Tanaka was the owner of the land in question, and that on that date he sold and agreed to convey the same to the plaintiffs by

78 Mont.—29

a contract in writing for the purchase price therein agreed upon; that on March 16, 1921, Tanaka assigned and delivered the contract to the Security Trust & Savings Bank of Billings as security for an indebtedness he was then owing to that bank, and as collateral for such further indebtedness as he might thereafter incur to the bank; that the bank was the owner and holder of the contract up to the time it made settlement with the plaintiffs; that, at the time Tanaka assigned the contract to the bank, his indebtedness was in excess of $3,000; that the amount due on the contract was $2,700 and interest; that the plaintiffs paid the interest which accrued on the contract, and also all taxes on the land described therein; that on November 28, 1924, they paid to the bank the sum of $1,350, which was accepted in full discharge of the payments the plaintiffs were required to make under the terms of the contract; that, at the time of such settlement, Tanaka was indebted to the bank in an amount in excess of $3,000; and that the payment made to it by the plaintiffs of $1,350 was by it credited on Tanaka's indebtedness; that on October 12, 1921, Tanaka executed a deed to Frank T. Uyeda for the land described in the contract, herein involved, which was recorded on April 4, 1925; that, at the time of the execution of the deed, Tanaka informed Uyeda and R. M. Davies, of the Davies Real Estate Company, that the land was subject to his contract made with the plaintiffs; that at that time the plaintiffs were in possession of and residing on the land, which facts were known to Uyeda and Davies; that Uyeda never made any demand on the plaintiffs, or either of them, for the payments due under the contract, and the plaintiffs had no knowledge of the land having been deeded to Uyeda at the time they settled with the bank; that the defendant Davies Real Estate Company, in an action against the defendant Frank T. Uyeda, levied an attachment on the lands involved herein on February 29, 1924, and subsequently obtained a judgment against Uyeda, and thereafter became the purchaser of such lands at a sale thereof under execution upon

the judgment; and that the Davies Real Estate Company derives title or interest in the lands wholly by reason of such sheriff's sale thereof. Such findings are all justified from the evidence, and from the undisputed facts it would seem that there is little to be said in discussion of the law applicable.

Our statute provides that every conveyance of real property, recorded as prescribed by law, is constructive notice of its contents to subsequent purchasers and encumbrancers (sec. 6934, Rev. Codes 1921), and a contract for the sale of land is a conveyance of real property within the meaning of the law (*Id.,* sec. 6936). Every conveyance of real property, other than a lease for a term not exceeding one year, is void against any subsequent purchaser or encumbrancer of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded. (*Id.,* sec. 6935.)

The lien of a judgment extends to property attached belonging to the defendant in an action (secs. 9256, 9288, Rev. Codes 1921), as well as all real property belonging to the judgment debtor not exempt from execution, owned by him at the time, or which he may subsequently acquire. (*Id.,* sec. 9410.) All property, both real and personal, or any interest therein of the judgment debtor, not exempt by law, and all property and rights of property, seized and held under attachment in the action, are liable to execution. (*Id.,* sec. 9424.) But, [1] construing the provisions of section 9410 with those of section 9424, leads to the conclusion that an interest in real estate not disclosed of record is not subject to the lien of a docketed judgment. (*McMillan* v. *Davenport,* 44 Mont. 23, Ann. Cas. 1912D, 984, 118 Pac. 756.)

We recognize the correct rule of law to be, as contended by the appellant, admirably stated by Professor Pomeroy in his [2] book on Equity Jurisprudence, fourth edition, Volume 2, section 626, as follows: "Wherever a purchaser holds under a conveyance, and is obliged to make out his title through that deed, or through a series of prior deeds, the general rule

is firmly established that he has constructive notice of every matter connected with or affecting the estate which appears, either by description of parties, by recital, by reference, or otherwise, on the face of any deed which forms an essential link in the chain of instruments through which he must derive his title. The reasons for this doctrine are obvious and most convincing; in fact, there could be no security in land ownership unless it were strictly enforced. The right of such a purchaser is, under our system of conveyancing, confined to the instruments which constitute his chain of title, which are his title deeds, and everything appearing in those instruments and forming a legitimate part thereof is a necessary element of his title. The rationale of the rule is equally clear and certain. Any description, recital of fact, reference to other documents, puts the purchaser upon an inquiry. He is bound to follow up this inquiry step by step, from one discovery to another, from one instrument to another, until the whole series of title deeds is exhausted, and a complete knowledge of all the matters referred to in their provisions and affecting the estate is obtained. Being thus put upon the inquiry, he is conclusively presumed to have prosecuted it until its final result, and with ultimate success. The purchaser's ignorance that a particular instrument forming a link in his chain of title was in existence, and his consequent failure to examine it, would not in the slightest affect the operation of the rule. An imperative duty is laid upon him to ascertain all the instruments which constitute essential parts of his title, and to inform himself of all that they contain.''

The rule is stated a little differently, but to the same effect, by Mr. Devlin in his work on Deeds, third edition, Volume 2, page 1889 *et seq.*, cited by counsel for the appellant in support of the petition for a rehearing of this case.

Applying this rule to the facts, and bearing in mind our [3, 4] statutory provisions as to the recording of instruments, has the appellant established his claim to the land as a *bona fide* purchaser for a valuable consideration as against

the rights of the plaintiff? We think not. To hold otherwise would be inequitable, and work a manifest injustice. The plaintiff's contract for the purchase of the land was of record, and Uyeda and Davies had actual knowledge of its existence and of its terms at the time Tanaka executed the deed for the land to Uyeda. They were bound by actual, as well as constructive, notice of the plaintiff's interest in the land at the time of the delivery of the deed. The assignment of the contract was made to the bank by Tanaka as security for his indebtedness, and whether it be treated as a pledge or an equitable mortgage is of no consequence in arriving at a just decision as to the rights of the parties. It was assigned to the bank by Tanaka as security for the repayment of more than the amount due on the contract, and thereby the bank was constituted Tanaka's agent to collect the amount due on the contract and apply the same on his indebtedness. If the bank saw fit to accept a lesser amount than was due, in compromise of the contract with the plaintiffs, no one other than Tanaka could be heard to complain, unless paramount rights of others had intervened.

The plaintiffs' *chain of title* to the land was unaffected by the proceedings against Uyeda, so that the plaintiffs were safe in making payment to the bank in full settlement of their contract to purchase the land. The chain of title, so far as the plaintiffs were concerned, and of which they were required to take notice at the time they paid the bank in settlement of their contract to purchase the land, consisted of Tanaka's title in fee to the land and their contract to purchase the same from him. Tanaka's unrecorded deed to Uyeda or the subsequent proceedings against Uyeda were of no concern to the plaintiffs, nor were they bound to take notice thereof, since their chain of title was in no manner affected thereby at the time they made payment to the bank in full settlement of their contract to purchase the land.

There is no evidence to show that the plaintiffs had actual knowledge of the conveyance made of the land from Tanaka

to Uyeda and, as the deed was not recorded until after the plaintiffs had made payment to the bank they cannot be held to have had constructive knowledge thereof. At the time the plaintiffs made final settlement with the bank of the amount due upon the purchase of the land, the records disclosed legal title in Tanaka, subject to plaintiffs' contract of purchase. Plaintiffs, being in possession of the land, and without any knowledge of the conveyance to Uyeda, were legally required to make settlement of the amount due on their contract with Tanaka. Tanaka having departed this state, the bank, assuming to act as his agent in carrying out the contract, accepted the plaintiffs' money in full settlement. Thus the plaintiffs became entitled to a deed for the land, unless the appellant secured prior rights against the plaintiffs by reason of the levy of an attachment on the land and a subsequent judgment in an action by the appellant against Uyeda, a third party, who was then a stranger to, and in no manner connected with, the record title. He secured no superior rights to those of the plaintiffs by reason of the issuance of the sheriff's certificate of sale of the property in the action against Uyeda, nor by the recording of the deed from Tanaka to Uyeda, subsequent to the settlement made by the plaintiffs with the bank of the amount due on their contract. The plaintiffs settled in full with the bank for the amount due on their contract on November 28, 1924, more than three months before the sale of the land on execution in the Uyeda action, and more than four months prior to the time the deed from Tanaka to Uyeda was placed of record.

In our opinion, the plaintiffs, in their possession and right to the land, were in no manner affected or disturbed by the attachment levied on the land in the action of Davies Real Estate Company against Uyeda, nor by the judgment subsequently entered, and the sale of the property on execution in that action did not change the plaintiffs' position in any respect. "Neither the language nor the policy of the registry Acts was intended to affect the holders of antecedent

rights, but only such persons as are compelled to search the records in order to protect their own interests. Accordingly, the universal rule is that the record of an instrument is constructive notice to subsequent purchasers and encumbrancers only, and does not affect prior parties. This remains true though the prior purchaser has not acquired the legal title nor made full payment of the purchase price." (23 R. C. L. 212.)

From the facts it must be clear that the plaintiffs were not subsequent purchasers or encumbrancers of the property as respects the deed of the property by Tanaka to Uyeda and its recordation. The plaintiffs' contract was first of record, and, aside from the record, both the appellant and Uyeda had actual knowledge of its existence and its terms, and, as to the record title, since Uyeda's interest in the real estate was not disclosed by the records, the plaintiffs' rights under their contract were unaffected by the attachment and judgment against Uyeda. The plaintiffs were not chargeable with notice of that which was done in an action to which they were not made parties, and concerning which they were wholly in ignorance, even though, as an incident thereto, endeavor was being made to effect a lien on the real property held by these plaintiffs under their contract of purchase.

It is our opinion that neither an attachment nor a judgment constitutes a prior lien on real property against a vendee thereof in possession under a duly recorded contract of purchase from the record owner, in an action against the owner's subsequent grantee whose deed was not recorded, and as to which the contract purchaser has no knowledge. There was no obligation resting upon the bank to place its assignment of the Piccolo contract of record, and its failure so to do did not deprive the plaintiffs of right to deal with the bank as Tanaka's representative prior to anything of record showing that Tanaka had conveyed the property to another.

The case of *Flinner* v. *McVay*, 37 Mont. 306, 15 Ann. Cas. 1175, 19 L. R. A. (n. s.) 879, 96 Pac. 340, cited and relied

upon by the appellant in support of the motion for a rehearing, is not in point. In that case the assignment attempted to be made of the contract to purchase was by mere oral delivery of the contract. There was no writing executed in consummation of the assignment. In that case it is simply held that the assignment was void because there was no transfer of it in writing, as required by the statute of frauds. It appeared that one Knowlton had a written contract for the purchase of a tract of land in Gallatin county on terms recited. His son held a power of attorney from him, and made delivery of the contract for the purchase of the land without any written assignment thereof. Since the holder of the contract had not obtained the rights of the party who originally contracted to purchase the land by a mere delivery of the contract, it was held that a mere delivery did not constitute a legal transfer thereof.

The burden rests on the appellant to show error committed by the trial court. In this it has wholly failed, and therefore the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES, MYERS, MATTHEWS and STARK concur.

Rehearing denied March 17, 1927.