LOWRY ET AL., RESPONDENTS, *v.* CARRIER, APPELLANT.

(No. 3,956.)

(Submitted December 5, 1918.   Decided December 30, 1918.)

[177 Pac. 756.]

*Waters and Water Rights — Ditches — Easements — User — Abandonment — Evidence—Adverse Possession—Prescription —Complaint—Incompatible Claims—Equity.*

Waters and Water Rights—Ditches—Easements—Extent of User—Evidence.
   1.  The extent of an easement acquired by adverse user is measured by the extent of the use; hence evidence of the amount of water which had been or could be used through a ditch, title to which rested upon prescription, was admissible.
   [As to what constitutes appropriation of water, see note in 60 Am. St. Rep. 799.]

Same—Ditches—Public Lands—Easements.
   2.  Entrymen on public lands over which irrigating ditches had theretofore been constructed under the right conferred by sections 2339 and 2340, United States Revised Statutes, take the lands burdened with the easement thus granted.

Same—Ditches—Nonuser—Abandonment—Evidence.
   3.  Evidence of limited use or nonuser of an irrigating ditch is not alone sufficient to establish abandonment.

Same—Pleading—Complaint—Incompatible Theories.
   4.  A party may in his complaint present his claim to the use of irrigating ditches in different counts, each founded upon a different theory to meet the exigencies of the case as disclosed by the evidence, provided the theories are not incompatible.

Same—Adverse Possession—Prescription—Incompatible Theories.
    5.   Since use of one's own property cannot be "adverse" within the meaning of that term as used in the law of prescription, assertion of title to an easement over public lands granted by the federal government under sections 2339 and 2340, United States Revised Statutes, for ditch purposes, and claim of the same right under title by prescription thereafter acquired were incompatible, in the absence of abandonment.

Same—Equity—Decree Based on Incompatible Theories—Review.
    6.   Under section 6253, Revised Codes, the supreme court will in an equity case, the decree in which was founded upon incompatible theories, dispose of the cause on its merits, all the evidence being presented in the record, by eliminating from the decree findings based upon the erroneous theory, and adopting those founded upon the correct one supported by the evidence.

Same—Ditches—Ownership—User—Evidence.
    7.   The owner of a ditch right cannot be compelled to surrender it merely because its function can be performed by another ditch owned by him and not in dispute; hence evidence tending to show that all his irrigable land could be watered from a ditch other than the one title to which was at issue, was inadmissible.

Same—Ditches—Ownership—Change of Boundary Lines.
    8.   Title to a ditch constructed on what was unsurveyed public land at the time of its construction, was not affected by a change in boundary lines wrought by the official survey, causing a portion of the ditch to fall within the lines of an adjacent owner.

·*Appeal from District Court, Meagher County; John A. Matthews, Judge.*

Suit by Emma M. Lowry and others against Frank C. Carrier. From a judgment for plaintiff and an order denying a new trial, the defendant appeals. Modified and affirmed.

*Mr. E. K. Cheadle* and *Messrs. Ford & Linn,* for Appellant, submitted a brief; *Mr. Cheadle* argued the cause orally.

*Messrs. Wash, Nolan & Scallon,* for Respondents, submitted a brief; *Mr. C. B. Nolan* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This suit was instituted to have determined the relative rights of the parties to certain irrigating ditches. Plaintiffs prevailed, and defendant appealed from the judgment and from an order denying his motion for a new trial.

There is no substantial conflict in the evidence. Stated in general terms, the record discloses that William Scott, Magnus Johnson and Peter Madson settled upon and inclosed certain unsurveyed, unappropriated public lands in Meagher county; that Scott's inclosure was immediately north of the inclosure of Johnson and Madson, and separated from them by a division fence; that the lands are arid and require artificial irrigation; that about 1886 Scott appropriated 600 inches of water from Sheep Creek, and constructed a main ditch running westerly from the creek to convey water upon the lands which he had inclosed; that about 1890 he sold to Johnson and Madson an undivided half interest in his water right and in his main ditch at least from the headgate to a point near his corral; that at this point a lateral ditch was constructed to convey water upon the Johnson and Madson inclosures; that later two other lateral ditches were constructed—lateral No. 2 tapping the main ditch a short distance west of the corral, and lateral No. 3 tapping the main ditch a considerable distance farther west; that a sublateral was constructed from lateral No. 3; that all these ditches were constructed and used before the government surveys were made; that lateral No. 3 and the sublateral were designed to be used, and were used, originally, to irrigate lands within the Johnson and Madson inclosures; that when the lands were surveyed by the government in 1898 it was ascertained that the several parcels of land mentioned did not conform to legal subdivisions; that the fence which separated the Scott claim from the Johnson and Madson claims was moved south to the quarter-section line, with the result that a strip of land theretofore within the Johnson and Madson inclosure became a part of the Scott claim; that a county road was opened between the claims; that plaintiff Lowry is the successor in interest of Johnson and Madson; that defendant is the successor in interest of Scott; that the other plaintiffs are lessees of plaintiff Lowry, and that lateral No. 1, or "Lowry Branch," is not involved in this controversy, it being conceded to belong to plaintiff Lowry.

As we understand the record, the court found that the several ditches to which reference is made in the testimony of the witnesses are correctly represented by a map (Defendant's Exhibit "A"), which is here reproduced with the addition of certain figures to identify the ditches with greater particularity:

On the map to which reference is made, lateral No. 1 is designated "Lowry Branch" and lateral No. 2 is marked "Carrier Ditch."

The issues raised by the pleadings are whether plaintiff Lowry owns or is entitled to use the main ditch from A to B, and whether she owns or is entitled to use lateral No. 3 and the sublateral. In her complaint she claims title to them: First, by virtue of the fact that they were constructed by her predecessors in interest over unsurveyed public lands; and, second, by virtue of adverse use.

The court found that the *laterals in dispute* were constructed by Johnson and Madson to irrigate lands within their inclosures, some of which lands fell within the defendant's claim when the survey was made and the fence removed to the quarter-section line. The court further found that for more than fifteen years prior to the commencement of this action plaintiff had been in the open, notorious, continuous and adverse use of said laterals under a claim of right, and that for more than ten years prior to the commencement of this action defendant, Car-

rier, had used the main ditch and laterals other than lateral No. 1. The court concluded that plaintiff Lowry and defendant each owns an undivided half interest in "said ditch, laterals and sublaterals as they pass through the premises of defendant."

The decree awards to plaintiff Lowry an undivided half interest in certain ditches and an easement in the lands of defendant through which the ditches run.

Defendant complains of rulings of the court excluding evidence, of certain findings, and of the decree.

1. Upon the trial defendant sought to show the limited [1] amount of water which had been or could be used upon plaintiff Lowry's lands and the amount used and necessary to be used on defendant's land, but the court excluded the evidence.

The respective water rights of these parties were not involved directly, but if plaintiff Lowry had grounded her title to the ditches in controversy upon prescription exclusively, the evidence would have been material. The extent of an easement acquired by adverse user is measured by the extent of the use. (Sec. 4512, Rev. Codes; 9 R. C. L. 788, and cases cited.) The court decreed to each party a one-half interest in the ditches, without reference to the extent of the use of them by either. [2] Plaintiff pleaded title by prescription, but relied also upon the fact that the ditches had been constructed by her predecessors at a time when the land over which they were constructed and now owned by defendant was open, public land of the United States, and the evidence given by defendant himself fully sustains this latter theory.

Sections 2339 and 2340, United States Revised Statutes (U. S. Comp. Stats., secs. 4647, 4649), in effect grant to the owner of a water right the right to construct ditches over the public lands for the purpose of conducting water for irrigation purposes, and in effect declare that the subsequent entryman on such lands takes them burdened with the easement. (*Cottonwood Ditch Co.* v. *Thom,* 39 Mont. 115, 101 Pac. 825, 104

Pac. 281.) Upon the undisputed evidence, Johnson and Madson became the owners of lateral No. 3 and the sublateral by virtue of the fact that they constructed them on public land, and as such owners they were entitled to use them, and the extent of their use was of no concern to defendant, in the absence [3] of a showing of abandonment. Evidence of limited use or of nonuser would not alone establish abandonment (*Moore* v. *Sherman,* 52 Mont. 542, 159 Pac. 966), and upon this theory of the case, the offered evidence was immaterial.

While it was permissible for plaintiffs in their complaint to [4, 5] present their claim to these ditches in different counts, each founded upon a different theory to meet the exigencies of the case as disclosed by the evidence (*Blankenship* v. *Decker,* 34 Mont. 292, 85 Pac. 1035), it was not possible for them in this instance to maintain both theories, for they are incompatible; yet the court finds that both theories are sustained by the evidence. If lateral No. 3 and the sublateral were constructed by Johnson and Madson over public land, their right to the ditches was confirmed by the government which owned the land; and, in the absence of abandonment, they could not thereafter acquire the same character of title by adverse user.

Use by a party of his own property is never adverse in the sense that the term ''adverse'' is employed in the law of prescription. ''Adverse possession is the open and hostile possession of land under a claim of title *to the exclusion of the true owner.*'' (1 Words and Phrases, Second Series, 136; *Scallon* v. *Manhattan Ry. Co.,* 185 N. Y. 359, 7 Ann. Cas. 168, 78 N. E. 284.)

We are confronted by a decree founded upon theories altogether inconsistent; but this is a suit in equity. The evidence in its entirety is before us, and we are authorized by section 6253, Revised Codes, to dispose of the cause on its merits. (*Pew* v. *Johnson,* 35 Mont. 173, 119 Am. St. Rep. 852, 88 Pac. 770.) If the theory of adverse user be adopted, a new trial must be ordered (1) for the error of the court in excluding evi-

dence of the extent of the use; and (2) because the evidence is insufficient to sustain the finding that plaintiff Lowry acquired a one-half interest. But the evidence is sufficient to sustain the findings to the effect that title to lateral No. 3 and the sublateral was acquired by virtue of the fact that those ditches were constructed by Johnson and Madson over public land and that plaintiff Lowry succeeded to their rights, and we adopt this theory of the case. It involves the elimination from finding No. 7 of all reference to the adverse use of these ditches by plaintiff Lowry and her predecessors in interest.

Complaint is made also that the court refused to permit de-
[7] fendant to show that all of plaintiff Lowry's irrigable land can be watered successfully from the "Lowry Branch." The ruling was correct upon either theory of the case indicated above. If plaintiff Lowry acquired an interest in lateral No. 3 and the sublateral, either by grant or prescription, she cannot be compelled to surrender that property right because its function can be performed by other property which she owns.

2. Defendant cannot complain that the court found that Johnson and Madson constructed lateral No. 3 and the sublateral. His own testimony, given on cross-examination, establishes the fact beyond controversy. Neither can he object that the court awarded to plaintiff Lowry an undivided half interest in those ditches, for upon the theory of the case now under consideration, the court might have awarded them to her in their entirety. She, however, does not complain of the limited interest decreed to her, nor of the fact that the decree does not, in express terms at least, award her any interest in the main ditch between points A and B.

It is not made plain upon what theory the court granted to defendant an undivided half interest in lateral No. 3 and the sublateral. Assuming that these ditches belonged to plaintiff Lowry and her predecessors from the date of their construction, they remained her property after she succeeded to the interests of Johnson and Madson, unless she abandoned them in whole or in part, or unless defendant acquired an interest in them by

prescription, and the evidence does not sustain either of these alternatives; furthermore, defendant does not claim that he acquired title by adverse user, but, on the contrary, he denies that plaintiff Lowry or her predecessors ever had any interest in any lateral or sublateral other than lateral No. 1, the "Lowry Branch." However, as neither party complains of the decree in the particulars just mentioned, we refrain from further comment upon them.

3. Lateral No. 3 and the sublateral were constructed to irrigate lands originally within the Johnson and Madson inclosures, but the fact that a portion of those lands fell within the lines of defendant's claim when the survey was made and the division fence was moved did not operate to divest plaintiff Lowry of her title to the ditches or invest defendant with title to them.

[8]

4. In its conclusion of law No. 2 the court declared that plaintiff Lowry "is entitled to the right to use said ditch, laterals and sublaterals as they pass through the premises of the defendant." The language is indefinite, but sufficiently comprehensive to include ditches not in controversy, and to which plaintiff Lowry neither has nor claims any right. The decree awards to Mrs. Lowry "an undivided one-half interest in the lateral ditches mentioned and described in her complaint" and "an easement in the land of defendant through which said ditches run," and then, as if to identify with minute particularity the ditches referred to, the decree continues: "The said ditches being the ones west of the first lateral tapping the main ditch which takes water to the land of the plaintiff Emma M. Lowry, the said ditches being about three feet wide on top and about two feet deep, and each being about 600 feet in length as they run through defendant's land." The only ditches mentioned in the testimony which meet the description just given in any degree are laterals 2 and 3. There is not any finding that plaintiff Lowry has an interest in lateral No. 2, and such a finding cannot be implied, for there is not any evidence to support it, and, furthermore, it is not involved in this contro-

versy by the pleadings. The complaint describes but one lateral (No. 3) and one sublateral.

To the end that these parties may understand definitely their respective rights under the decree, a copy of the map (Defendant's Exhibit "A"), with the laterals numbered as in the diagram herein produced, should be attached to and made a part of the decree, and the first paragraph of the decree should be amended to read as follows: "It is hereby ordered, adjudged and decreed that the said plaintiff Emma M. Lowry is now the owner, in the possession and entitled to the possession and use, of an undivided one-half interest in the lateral ditches mentioned and described in her complaint, to-wit, lateral No. 3 and the sublateral shown upon the map hereto attached and hereof made a part, and has an easement in the land of the defendant through which said ditches run, said land of defendant being described as the south half of the northwest quarter of section 29, and the south half of the northeast quarter of section 30, township 12 north, range 7 east, in Meagher county, Montana."

The order overruling the motion for a new trial is affirmed. The cause is remanded to the district court, with directions to modify the findings and decree in accordance with the views herein expressed, and, when so modified, the decree will stand affirmed. Each party will pay his own costs of these appeals.

*Modified and affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE PIGOTT concur.