O'NEILL, Respondent, v. WALL, Appellant.

(No. 7,578.)

(Submitted November 6, 1936. Decided November 25, 1936.)

[62 Pac. (2d) 672.]

*Mr. W. J. Paul* and *Mr. P. E. Geagan,* for Appellant, submitted a brief and argued the cause orally.

*Mr. H. L. Maury* and *Mr. A. G. Shone,* for Respondent, submitted an original and a supplemental brief; *Mr. Maury* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff brought this action to recover compensation for services alleged to have been rendered by her in inducing one or more of certain persons to enter into a contract with the defendant relating to the disposition of certain real estate which was thought to be valuable for mining purposes.

The complaint was in two counts. The first was on an express contract, and the second was upon a *quantum meruit*. The defendant answered denying all of the allegations of the complaint, except the making of the written contract which he entered into with one Schmit, a copy of which is annexed to the complaint as an exhibit, was admitted, and also that the defendant had not paid to the plaintiff all or any part of the compensation alleged to be due to the plaintiff. Affirmatively, the defendant pleaded that both causes of action were barred by subdivision 6 of section 7519, Revised Codes, and also alleged that by reason of certain facts plaintiff was estopped to claim compensation. Issue was joined on the affirmative allegations of the answer by reply. The cause was tried before the court sitting with a jury, resulting in a verdict for plaintiff in the sum of $5,000, the amount claimed in her complaint. Judgment was entered in conformity with this verdict. A motion for new trial was heard and denied. The appeal is from the judgment.

Many specifications of error are made. We will first give consideration to the question, raised by various specifications, as to whether the cause of action pleaded by the plaintiff was barred by the provisions of subdivision 6 of section 7519. The opening paragraph of the section declares that the following contracts are invalid unless the same or some note or memorandum thereof be in writing and subscribed by the party to be charged or his agent: Subdivision 6 includes an agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission.

Admittedly any contract between plaintiff and defendant, as testified to, was oral.

According to the testimony of the plaintiff it was agreed ▮▮▮▮ that she was to secure with either Schmit, Gray, Schwartz and Miss Breeding, either a "lease and option, or a lease or option, that was acceptable to the defendant," by the terms of which he was to secure $25,000 down, $15,-000 in six months, $35,000 six months later, and $50,000 at the end of an additional six months, or eighteen months after the date of the contract. It is not disputed that defendant entered into a contract on July 22, 1929, with Schmit, one of the designated persons, whereby the defendant agreed to sell, and Schmit agreed to buy, the mining property in question with the payments conforming in amount and date as testified by the plaintiff. The question is thus presented, Is a contract employing a broker or agent to induce others to enter into an option or lease, or a lease and option, required by the statute to be in writing?

It will be noted that the statute relates to the purchase or sale of real estate. It was definitely decided by this court in the case of *Kramer* v. *Schmidt*, 62 Mont. 568, 206 Pac. 620, that a contract to secure an option need not be in writing. Since the holder of an option acquires nothing but a personal privilege to purchase, which does not ripen into an interest in the land until he chooses to exercise the privilege conferred by the option and complies with the terms on which he purchased it, an agreement employing a broker to procure or negotiate an option does not amount to an employment of a broker or agent to buy or sell an interest in land.

We then approach the question, Is a lease an interest in real estate? for, if it is real estate, then the employment of a broker to secure or sell a lease would be selling or buying real estate, and hence within the statute.

Estates in real property in respect to their duration and enjoyment are classified by section 6723, Revised Codes. By

section 6727 estates of inheritance and for life are called estates of freehold. A lease would not come within either classification. By this same section estates for years and of lesser and more indefinite duration are declared to be chattels real. This classification is identical with that which obtained at common law. (See 2 Cooley's Blackstone, 15.) California has this identical section and has definitely held that an estate for years is personal property and not real estate. (*Jeffers* v. *Easton, Eldridge & Co.*, 113 Cal. 345, 45 Pac. 680; *Summerville* v. *Stockton Milling Co.*, 142 Cal. 529, 76 Pac. 243.) In 1 Tiffany on Real Property, second edition, 8, it is said: "In view of what has been said above, it would appear that estates less than freehold in land are properly to be referred to as personal estate or property rather than as real estate or property, and the usage of some courts is in accord with this view, the expression real estate or real property being confined to estates of freehold."

Thus it appears that a lease is not real estate, and accordingly a broker's contract to procure or sell a lease is not within the statute and need not be in writing. The contract which was entered into by the defendant was an agreement to sell and purchase real estate, but such an agreement does not amount to a sale of real estate. It is an executory agreement which would become a sale of real estate when fully performed, that is, when all of the payments have been made. (*Wright Land & Investment Co.* v. *Even*, 57 Mont. 1, 186 Pac. 681.) That particular contract had to be in writing in order to be valid (subd. 5, sec. 7519, Rev. Codes); and if plaintiff had purported to sign such an agreement on behalf of the defendant, her authority by the terms of the section was required to be in writing; but the defendant did not act in the execution of this agreement through his representative, but did execute it in person. This contract, as entered into, was somewhat more advantageous than the type of contract which plaintiff testifies she was to procure on defendant's behalf, in that, according to her testimony, only an option and

lease was to be procured which would not of necessity absolutely bind the optionee or lessee to make the payments, whereas under the contract entered into the purchaser bound himself to make not only the initial payment, but all of the succeeding ones; but defendant is in no position to complain, as the change was of his own making and resulted in a more advantageous contract from his standpoint. The contract sued on was not required to be in writing by the statute pleaded.

Prior to the trial of this action defendant sought a continuance of the case, which application was by the court denied. A bill of exceptions was settled and the denial of this motion for continuance is specified as error. The basis of the motion for continuance was the absence of the defendant from the state, owing to illness which prevented him from being either present in court and testifying or giving a deposition. The complaint in the action was filed on June 13, 1934. The answer, verified by defendant's counsel, was filed on November 23, 1934, and the reply on November 28 of that year. The motion for continuance was heard on November 23, 1935, and denied two days later. The trial was begun on December 30, 1935.

It appears from various affidavits that the defendant had left Montana and gone to San Francisco in the month of July, 1934. Counsel for defendant assert that defendant was the only person who knew the whereabouts of the witnesses; that it was necessary for him to be in attendance at the trial for the purpose of giving advice and assistance to the affiant and his co-counsel in the trial of the cause; that counsel was not then able to anticipate all of the testimony plaintiff might offer, and that the assistance of the defendant was necessary to produce witnesses to rebut any unexpected testimony. The same counsel expresses belief in his affidavit that by a continuance until the spring term of court the defendant would be in a better state of health and that his condition would be so improved that his deposition could be taken or he could attend the trial in person.

The affidavit of Dr. Jau Don Ball was filed in support of the motion for continuance, which discloses that defendant had been under his constant care and attention since the month of July, 1934; that during this period and at the time of the making of the affidavit, October 24, 1935, defendant was a very sick man; that during all of the fourteen months, affiant had refused to permit visitors to see defendant or permit the discussion of business or private affairs with him by his wife or others; that the discussion of business affairs depressed the defendant, weakened his resistance and increased his mental agitation, made him nervous and retarded any chance there was and now exists for his recovery; that the defendant is so weak at the present time and has been in such condition for the last —— months that he could not give a deposition in the above-entitled case or in any pending litigation, and that the strain of so doing would be a dangerous risk to the health of the defendant. This affiant further declared that he is of the opinion that it will be some time before the defendant can either testify or give a deposition without great danger and risk to his life and recovery.

Three other doctors, all of San Francisco, California, namely Dr. A. P. Krueger, who was professor of bacteriology of the University of California, Dr. William W. Newman, a practicing physician of that city, and Dr. E. A. Victors, by separate affidavits, all of the date of October 23, 1935, declared they had examined the defendant, and that he was not able to travel nor able to give a deposition in any litigation. They all concur in the opinion that he is suffering from Parkinsonian syndrome and arteriosclerosis. Dr Krueger states that Parkinsonian syndrome is the residuum of encephalitis lethargica. Dr. Victors used this latter term as synonymous with Parkinsonian syndrome. Dr. Ball states in his affidavit that the defendant was suffering from encephalitis, chronic infective colitis, bronchiectasis, all associated with great fatigue and exhaustion, and all requiring care and treatment. As to the three doctors other than Ball, none of them express

any opinion as to when, if ever, the defendant will be able to give a deposition or testify if the case be continued.

In the Fourteenth Edition of the Encyclopedia Britannica, volume 8, page 422, under the subject of encephalitis lethargica, it is stated under the paragraph on progress and prognosis that a rough approximation is that, of a hundred cases, 25 recover completely, 25 die, and 50 have various residue of which at least 25 exhibit the Parkinsonism. As a part of the same paragraph, it is said: "With regard to special manifestations, the Parkinsonian syndrome may be recovered from partially or even completely when it develops early in the disease, but when it appears later it usually progresses and mental changes may also occur. The outlook in the cases with the severer mental changes is poor; recovery is rarely more than partial and relapses may follow."

Mr. Geagan, another of defendant's counsel, made affidavits in one of which he stated that he visited the defendant on November 11, 1935, and in another that he interviewed him on March 28, 1935, in both instances in San Francisco. His conclusion from his observations was to the effect that the defendant was unable, owing to his physical condition, to give a deposition, although it is mentioned that he was sitting up a part of the time and occasionally going for short automobile rides.

It will be observed that three of the doctors who had examined the defendant, expressed no opinion as to when he would be able either to give a deposition or attend the trial of the cause. The fourth expresses the opinion that it would be some time, but does not attempt even to hazard an approximation of the length of time.

In the case of *Ward* v. *Strowd*, 76 Mont. 93, 244 Pac. 1007, 1009, this court said: "The matter of postponement lies within the sound discretion of the court, and the exercise of that discretion can only be reversed on an affirmative showing of abuse of discretion. (*McCarthy* v. *Anaconda C. M. Co.*, 70 Mont. 309, 225 Pac. 391; *State* v. *Showen*, 60 Mont.

474, 199 Pac. 917; *Meredith* v. *Roman,* 49 Mont. 204, 141 Pac. 643; *Borden* v. *Lynch,* 34 Mont. 503, 87 Pac. 609.) It was not indispensable that plaintiff, as a party litigant, be present at the trial (sec. 9331, Rev. Codes 1921; *Davenport* v. *Davenport,* 69 Mont. 405, 222 Pac. 422), and, in order to induce favorable action, some assurance should have been given the court that the attendance of the plaintiff could be secured within a reasonable time (*Engelkemeier* v. *Lillis,* 54 Okl. 282, 153 Pac. 877; *Beckman* v. *Waters,* 161 Cal. 581, 119 Pac. 922; *Mantonys* v. *Hueter,* 35 Ill. App. 27)."

It is incumbent upon one seeking a continuance by reason of the absence of a witness that he must show the probability that the witness can be produced at a later date. (*Lehman & Co.* v. *Skadan,* 86 Mont. 553, 284 Pac. 769; *Daly* v. *Swift & Co.,* 90 Mont. 52, 300 Pac. 265.)

In view of the failure of the defendant to show that in all probability he would either be able to give his deposition or attend the trial of the cause in person at some reasonable later date, and in view of the foregoing authorities, we are unable to say that the trial court abused its discretion in denying the motion for continuance.

One of the witnesses for plaintiff, by name Madge O'Connor, ▮ was permitted to testify over objection that she had a conversation with the defendant in which he told her that the plaintiff had been in business with him a good many years, and that she had undertaken to promote the Gold Creek property, and explained the remarkable work accomplished by the plaintiff, and that he said: "At one time I offered her a sum of money if a certain amount of money should come into the company, and he said it exceeded that, it will be $10,000, and if it keeps on going like it is now it will be $20,000, and Miss O'Neill will be taken care of for the rest of her life." After the introduction of this evidence, counsel moved to strike it on the ground that it was incompetent, irrelevant and immaterial and related to a transaction other than that claimed upon here. The witness, also over like objec-

tion, testified to the same conversation occurring at a date subsequent to the first. We gather from the record that the property of the defendant was the Gold Creek property, but these conversations, it is indicated, related to some contract other than the subject-matter of this suit. The only theory upon which this testimony could be admissible is that of proving a usage, custom or habit which would tend to prove the likelihood or probability of the testimony of the plaintiff with reference to the alleged contract, the foundation of the suit. Professor Wigmore, in volume 1 of his work on Evidence, second edition, section 377, after discussing the existence of such a rule, and making classifications of the various types of contracts to which it applies, makes the following observation: ''Contract evidence by *other contracts with the same person.* Here the making of other contracts with the same person should be received to show either the making in general or the specific terms of the contract in question, provided the other instances were so connected as to indicate a general plan or habit of which they were merely parts.'' The following cases illustrate the application of this rule: *Huntsman* v. *Nichols,* 116 Mass. 521; *Wood* v. *Finson,* 91 Me. 280, 39 Atl. 1007; *Varley* v. *Wayne Oil Tank & Pump Co.,* (Sup.) 165 N. Y. Supp. 1011; *Zane* v. *De Onativia,* 139 Cal. 328, 73 Pac. 856; *Holmes* v. *Goldsmith,* 147 U. S. 150 13 Sup. Ct. 288, 37 L. Ed. 118; 2 Jones' Commentaries on Evidence, 1145.

The trial court could properly have given a cautionary instruction directing the jury concerning the purpose of the admission of the above testimony, but no such instruction was offered or given. Its admission was not error.

At the close of the case the plaintiff dismissed her second ▌ cause of action. Considerable testimony had been received relative to what was done on the mining property by way of improvements after the making of the contract between defendant and Schmit. Testimony was also received as to the manner in which the defendant acquired this prop-

erty and the length of time he had held it. All of this class of testimony was received over objection. In urging its admission, counsel for plaintiff stated in some instances that it was especially relevant as to the plaintiff's second cause of action on the *quantum meruit*. Defendant contends that the admission of this testimony, the failure of the court to strike it after the dismissal of the second cause of action, and its failure to instruct the jury to disregard it was error. Some of this testimony was not of a very striking materiality, but it did tend to throw some light upon the probability of the defendant's making of such a contract as was testified to by plaintiff, and in some measure was corroborative of her testimony, and, therefore, admissible under the rule announced by this court in *Albertini* v. *Linden*, 43 Mont. 126, 115 Pac. 31.

The defendant pleaded an estoppel and asserts that under the pleading and proof and admissions, this defense should be sustained. It appears from the answer that one M. D. Kelly gave a release and satisfaction in writing to the defendant in which he recited the receipt of a consideration in the sum of $1,000 and the additional consideration of the delivery of a block of stock in a company thereafter to be formed for commissions or services rendered in connection with the sale of the property by the defendant and wife to Schmit and his associates. The release was dated July 23, 1929. It is alleged that as a part of this release the plaintiff wrote a letter on July 20, 1929, to the same Mr. Kelly in which she said, ''This is to notify you and your immediate associates now interested in the proposed taking over of the Pat Wall and Harry Symon's placer ground [describing it] that I hereby relinquish all claim to a commission or interest supposed to be due me. You please understand that my interest in this property is distinctly friendly and not in the least monetary.'' On the same date plaintiff mailed a letter to the defendant, inclosing a copy of the letter to Kelly. She stated, referring to the inclosed letter, ''This letter notifies

him and his group interested in taking over your property and also Harry Symon's property that I claim no commission whatever." The writing of these letters is admitted. It is not shown by the record that there is any connection between the plaintiff and the release and satisfaction by Kelly, other than these two letters.

The elements of an equitable estoppel are enumerated in the opinion of this court in the case of *Waddell* v. *School District,* 74 Mont. 91, 238 Pac. 884, 886, wherein it is said: "An essential element to the creation of an equitable estoppel is that the person asserting it must show affirmatively that he was misled to his prejudice by reason of the representations or conduct of another, respecting material matters as to which he had no personal knowledge, or means of knowledge, and that he acted in reliance thereon. It involves an element of falsehood or fraud, both of which are abhorred by the law, and is applied to protect a person from loss or damage in consequence of reliance placed upon the representations or inducements made by another by acts or words. 'It is elementary that before anyone can invoke the doctrine, he must show that he was misled to his prejudice by the conduct of which he complains.' "

In the release from Kelly to the defendant no mention is made of this plaintiff or any claim for commissions. In the plaintiff's letter to Kelly of July 20, she specifies that the notice is intended for him and his immediate associates. In her letter to the defendant of the same date, speaking of it she states, "That letter notifies him and his group." Nowhere in either letter does she indicate that she intends to release or forego any claim for commission which she might have as against the defendant; in fact, she carefully refrains from making any such statement or using any language from which it might be reasonably inferred. There is no testimony or admission in the pleadings from which it can be inferred that the defendant was misled to his prejudice by any mis-

representation on the part of plaintiff, and accordingly the plea of estoppel is not sustained.

Other specifications of error need not be considered in view of what we have already decided supra. The judgment is affirmed.

ASSOCIATE JUSTICES MATTHEWS, STEWART and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent, did not hear the argument and takes no part in the above decision.