ARONOW, Appellant, *v.* BISHOP et al., Respondents.

(No. 7,836.)

(Submitted November 14, 1938.  Decided December 5, 1938.)

[86 Pac. (2d) 644.]

(317)

318

*Mr. E. K. Cheadle, Jr.,* and *Mr. Louis P. Donovan,* for Appellant, submitted a brief; *Mr. Donovan* argued the cause orally.

320

*Mr. D. W. Doyle,* for Respondents S. J. Doyle, J. H. Usher, J. H. Hasterlik and Leo Bartl, submitted a brief.

*Mr. Sam D. Goza* and *Messrs. Ford & Fitzstephens,* for Respondents Nina E. Bishop and Faye Springmyer, submitted a brief; *Mr. S. C. Ford* argued the cause orally.

*Mr. A. A. Booth,* of the Bar of Seattle, Washington, for Respondent Helen M. Campbell, submitted a brief.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an action to quiet title to two oil and gas leases issued by the United States to plaintiff. On appropriate pleadings, the sufficiency of which is not questioned, the case was tried to the court without a jury. The court found that on December 15, 1921, the Secretary of the Interior issued and delivered to Gordon Campbell an oil and gas prospecting permit covering certain described lands in Toole county; that oil in commercial quantities was discovered in October, 1924, on parts of this land, during the time the permit was in full force and effect, and sufficient in quantity to entitle Campbell and his successors in interest to the issuance of leases; that while Campbell was the holder of the permit and on December 24, 1923, he transferred and sold to Nina E. Bishop one per cent. royalty on all of the oil and gas produced and saved from most of the lands embraced in the permit. The assignment was recorded on February 1, 1924. The court further found that thereafter, and on November 30, 1937, Nina E. Bishop transferred and sold one-fourth of one per cent. royalty to Leo Bartl; one-fourth of one per cent. to S. J. Doyle and one-fourth of one per cent. to J. H. Usher

on January 11, 1928, and one-eighth of one per cent. to J. H. Hasterlik on August 24, 1928; that all the transfers were duly recorded, Bartl's being recorded December 1, 1927, Doyle's June 4, 1928, Usher's July 30, 1928, and Hasterlik's December 15, 1930; that Gordon Campbell, while the holder of the permit, transferred and sold two per cent. of the royalty in the same lands to Helen M. Campbell on January 2, 1924, the instrument being recorded on January 17, 1925; that Gordon Campbell, while he was the holder of the permit, transferred and sold one per cent. of the royalty in the same lands to C. A. Springmyer on December 24, 1923, the instrument being recorded on August 29, 1927; that Springmyer is deceased and that at the time of his death he left surviving him his wife, Faye Springmyer, and two sons; that some time before September 14, 1928, the exact date not appearing, Gordon Campbell transferred and assigned the permit and plaintiff became the owner and holder thereof; that thereafter plaintiff, pursuant to the permit and after the permittee had complied with the terms thereof, obtained leases on the property covered by the permit—one dated February 27, 1925, and the other March 1, 1934,—both of which were recorded on January 21, 1936. The court found that plaintiff became the owner of the permit and of the leases with knowledge of the assignments of royalty in the oil and gas as above recited.

As conclusions of law the court found that the assignments operated to convey the interest described in each, and that the interest was one in the oil and gas in and under the lands described in each assignment; that the assignment of the permit to plaintiff was subject to the interests of the grantees in the royalty assignments; that the issuance of the leases did not terminate the royalty interests, and that plaintiff was entitled to have her title quieted but subject to the royalty interests covered by the assignments. Plaintiff appealed from the judgment and makes several specifications of error.

The main contentions of plaintiff are that the assignments by their terms relate merely to the oil and gas under the permit, and that the assignments do not purport to affect the

production of oil and gas under the leases; and that Gordon Campbell, never having owned the leases, could not impose burdens upon them by the royalty assignments.

The assignments of the royalty by Gordon Campbell are identical in form. What we have to say, therefore, as to one of them applies equally to the others. The assignment by Gordon Campbell to Helen M. Campbell reads:

"That Gordon Campbell of Great Falls, Montana, for and in consideration of the sum of One Dollar, and other good and valuable considerations in hand paid by Helen M. Campbell of Seattle, Wash., hereinafter called assignee, the receipt of which is hereby acknowledged and confessed, does hereby sell, assign, transfer, convey and set over unto the said assignee all of his right, title and interest in and to two per cent. (2%) of all of the oil and all of the gas produced and saved from the hereinafter described lands located in the County of Toole, State of Montana, to-wit": [Here follows description of property.] Continuing it states: "To have and to hold unto the said assignee, his heirs, administrators and assigns said royalty as above set forth, the said oil and gas so produced and saved from said lands to be delivered free of cost to the royalty owner in the pipe line serving said premises or tanks erected for the purpose of storing such products, together with the rights, privileges and benefits to be derived therefrom, and I do hereby assign said royalty under that certain Permit to Prospect for Oil and Gas dated December 15, 1921, issued by the United States Government to Gordon Campbell, Great Falls Serial No. 051863, covering the above described lands; and I agree to warrant and defend the title to the same and that I have lawful authority to sell and assign said royalty."

It is evident from the assignment as a whole that the statement in the assignment reading "and I do hereby assign said royalty under that certain Permit to Prospect for Oil and Gas dated December 15, 1921, issued by the United States Government to Gordon Campbell," was not intended in anywise to limit the assignment, but was merely explanatory of the interest

of Gordon Campbell entitling him to make the royalty assignment.

To hold that the assignments only covered oil and. gas produced under the permit and before leases were issued, would be to say that the assignments were practically useless. Under the federal statutes a permittee will not produce oil or gas to any great extent under a permit. Upon discovering valuable deposits of oil or gas he will immediately apply for a lease. Under the lease he is only required to pay to the government a royalty of five per·cent. on one-fourth of the lands covered by the permit, and not less than twelve and one-half per cent. on the remainder if he exercises his preferential right to a lease on the whole tract embraced in the permit. (Sec. 223, Title 30, U. S. C. A.) Whereas, under the permit, he will be obliged to pay to the government twenty per cent. of the oil and gas produced. (Sec. 224, Id.)

While the assignments do not specifically refer to production under leases to be issued, after discovery under the permit, as was done in the assignments involved in the cases of *Dougherty* v. *California Kettleman Oil Royalties, Inc.,* 9 Cal. (2d) 58, 69 Pac. (2d) 155, and *United States* v. *Spalding,* 97 Fed. (2d) 701, we think a reasonable construction of the assignments, when read in conjunction with the federal statutes regulating the issuance of permits and leases, leads to the conclusion that the parties intended by the assignments to cover oil and gas produced from leases based upon discovery under the permit, as well as that produced under the permit.

Plaintiff contends that the permit expired or passed out of ▮▮▮ existence at the time of the issuance of the leases, and that upon executing the leases there was created a new estate or interest separate and apart from the prospecting permit, and hence that the assignment made by Gordon Campbell expired at the time the leases were issued. Consideration of this question calls for an investigation of the federal statutes relating to oil and gas permits and leases.

Under section 221, Title 30, U. S. C. A., a prospecting permit is issued "for a period not exceeding two years," with the right of extension for another two-year period. Other liberal provisions have been enacted from time to time authorizing an extension of the permits. (Sec. 222, Title 30, U. S. C. A., and secs. 222a, 222b, 222c, 222d, 222e, 222f, 222g, 222h and 222i, Cumulative Annual Pocket Part of Titles 29–30, pp. 103–105.) "Under the Act and the authorities, the government 'prospecting permit' would seem to be practically equivalent to the ordinary lease of privately owned land thought to contain oil and gas; the government merely adopts a different method of handling the matter. The private owner executes a so-called 'lease' in the first instance, which authorizes the lessee to hold exclusive possession of the land for the purpose of prospecting for oil and gas, and it is generally held that such a 'lease' does not vest in the lessee an estate in the land or in the oil and gas therein, but simply the right to prospect for oil and gas, 'a sort of subterranean *ferae naturae*,' to which no title vests until reduced to possession by extraction from the earth; an incorporeal hereditament. (*In re Indian Territory Illuminating Oil Co.*, 43 Okl. 307, 142 Pac. 997; *National Oil & Pipe Line Co.* v. *Teel*, 95 Tex. 586, 587, 68 S. W. 979; *Richlands Oil Co.* v. *Morriss*, 108 Va. 288, 61 S. E. 762; *Crawford* v. *Ritchey*, 43 W. Va. 252, 27 S. E. 220; *Venture Oil Co.* v. *Fretts*, 152 Pa. 451, 25 Atl. 732; *Eastern Ohio Oil Co.* v. *McEvoy*, 75 Kan. 515, 89 Pac. 1048; *Barnsdall* v. *Owen*, 200 Fed. 519, 118 C. C. A. 623.) This is exactly the situation of the holder of a government 'permit.' 'The permit is itself an act of the Land Department, final so long as it lasts, and though in its inception a mere license conveying no estate in the land, it is a final grant of a valuable right pursuant to law which ought to be secured to the person to whom the law gives it.' (*Witbeck* v. *Hardeman*, (C. C. A.) 51 Fed. (2d) 450, 452, affirmed 286 U. S. 444, 52 Sup. Ct. 604, 76 L. Ed. 1217.) This 'grant of a valuable right' does not differ from the grant contained in the ordinary oil and gas lease executed by the individual owner, and, whatever the rule may be in other states,

in this jurisdiction such a right is held to take 'the character of an interest or an estate in the land itself. It is an interest in the land, although incorporeal.' (*Marias River Syndicate* v. *Big West Oil Co.*, 98 Mont. 254, 38 Pac. (2d) 599, 601), and is sufficiently an 'interest in real estate' to support an attachment. (*Williard* v. *Federal Surety Co.*, 91 Mont. 465, 8 Pac. (2d) 633.)'' (*Herigstad* v. *Hardrock Oil Co.*, 101 Mont. 22, 52 Pac. (2d) 171.)

The permit is not extinguished by the granting of leases. It is the foundation for leases and, when granted to the permittee or his assignee, they merely constitute, in substance and effect, a continuation of rights granted by the permit but under different terms and conditions. (Sec. 223, Title 30, U. S. C. A.)

Concededly, plaintiff's leases are based upon and grow out of the prospecting permit issued to Gordon Campbell and which was transferred and conveyed to plaintiff. Gordon Campbell, while the owner and holder of the prospecting permit, had a sufficient interest in the property to make valid assignments of royalty interests, and such assignments of royalty covered oil and gas recovered under the permit, as well as oil and gas produced under leases based and issued upon the strength of discovery made under the permit.

Plaintiff relies upon the cases of *Goocey* v. *Hopkins,* 206 Ky. 176, 266 S. W. 1087; *Bellport* v. *Harrison,* 123 Kan. 310, 255 Pac. 52; *Williard* v. *Campbell,* 91 Mont. 493, 11 Pac. (2d) 782; *Hawkins* v. *Klein,* 124 Okl. 161, 255 Pac. 570; *Robinson* v. *Eagle-Picher Lead Co.,* 132 Kan. 860, 297 Pac. 697, 75 A. L. R. 840, and other cases holding, in effect, that royalties given under one lease do not affect subsequent leases; but these cases have to do with royalties given under one lease which expired before the issuance of another. Here the permit was in effect when the lease of February 27, 1925, was issued, and the right to the lease executed on March 1, 1934, sprang from the permit and the discovery thereunder. The fact that the permittee, or his assigns, merely had the option to take a lease does not alter the result where, as here, the option was exercised. It is true

we said in *O'Neill* v. *Wall,* 103 Mont. 388, 62 Pac. (2d) 672, that one holding an option to purchase land acquires but a privilege to buy which does not ripen into an interest in land until the privilege is exercised. There is, however, in some respects, a clear distinction between an option and a permit. An oil and gas permit carries many of the features of an ordinary option to buy or lease land, but has other features in addition: A mere option to purchase or lease grants the holder no right of possession, while the oil and gas permit carries the right of possession for purposes of exploration with the accompanying right to repel trespass, and the right to dispose of or sell any oil or gas produced while operating under the permit.

The next contention of plaintiff is that the court erred in finding that plaintiff became the owner of the oil and gas permit with knowledge of the assignments of royalty. As before stated, it does not definitely appear when plaintiff became the owner of the oil and gas permit. It does appear that the assignment to Nina E. Bishop was recorded on February 1, 1924. The assignment to Helen M. Campbell was recorded January 17, 1925, and the assignment to Springmyer was recorded August 29, 1927. The record does not disclose whether the assignment of the permit by Gordon Campbell was ever recorded. The only recorded instruments showing any right of plaintiff to the lands in question are the leases. One lease was issued to plaintiff on February 27, 1925, before the assignment of royalty to Springmyer was recorded, but the lease was not recorded until January 21, 1936. The other lease was issued November 1, 1934, and recorded January 21, 1936. The assignments of royalty were recorded prior to the time the leases were recorded, and therefore the leases were taken subject to the assignments under our recording statutes. (Sec. 6935, Rev. Codes; *Hastings* v. *Wise,* 91 Mont. 430, 8 Pac. (2d) 636.)

So far as the record discloses, plaintiff had nothing of record showing any interest in the lands until in 1936, or long after all the assignments of royalty were recorded. Hence it is im-

material, under the facts here, as to when plaintiff acquired actual notice of the assignments.

The burden of proof was upon plaintiff. In an action to quiet title plaintiff must succeed on the strength of his own title and not on the weakness of that of his adversary. (*Borgeson* v. *Tubb,* 54 Mont. 557, 172 Pac. 326.) This should be particularly true where, as here, plaintiff did not assert in her reply to the answers that she was an innocent purchaser of the permit without notice, so as to raise that issue by the pleadings. (*Reeder* v. *Cox,* 218 Ala. 182, 118 So. 338.) If the court's finding of fact to the effect that plaintiff took the permit with notice of the assignments be eliminated from the findings, the result announced by the court in its conclusions of law would not be changed.

The next contention of plaintiff is that the assignments are not valid because not approved by the Secretary of the Interior as required by rules promulgated by that department. These rules were promulgated for the benefit of the Department of the Interior, and the plaintiff here cannot take advantage of that regulation to defeat the assignments. (*Herigstad* v. *Hardrock Oil Co.,* supra; *Isaacs* v. *DeHon,* 11 Fed. (2d) 943.) The lack of approval by the Secretary of the Interior can only be raised by the government. (*Dougherty* v. *California Kettleman Oil Royalties, Inc.,* supra.)

The judgment is accordingly affirmed.

MR. CHIEF JUSTICE GODDARD and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

Rehearing denied January 30, 1939.