WILLIAM J. PLUHAR, ETC., PLAINTIFF AND RESPONDENT, *v.* PAUL GUDERJAHN, A SINGLE MAN, ET AL., DEFENDANTS, (PAUL GUDERJAHN, APPELLANT.)

No. 9573.
Submitted January 22, 1958. Decided July 17, 1958.
328 Pac. (2d) 129.

Hugh J. Lemire, Miles City, Robert E. Purcell, Jordan, Hugh J. Lemire argued orally, for appellant.

Manuel J. Roth, Jordan, argued orally, for respondent.

MR. CHIEF JUSTICE HARRISON:

Plaintiff filed a complaint to quiet title, alleging that he was the owner and in possession of certain lands in Garfield County, Montana; that such title was founded upon written instruments of conveyances; that his occupancy and possession had been open, notorious, undisputed and adverse as against all the

world; that the land had been occupied and claimed for more than ten years continuously and that all taxes levied and assessed had been paid; that the defendants claimed an interest in the lands adverse to the plaintiff which was without right, and praying that the title be quieted in plaintiff.

Defendant answered, admitting that he claimed an interest in the lands consisting of a royalty interest in all oil recovered and saved therefrom. By way of counter-claim he alleged that he was the original patentee from the United States; that he sold the lands described, and reserved in the deed of conveyance an undivided one-tenth royalty interest in and to all oil recovered and saved therefrom; and that the title of plaintiff was based upon a tax deed which defendant contended was null and void.

Defendant prayed for judgment that he was the owner of an undivided one-tenth royalty interest in all oil recovered and saved, and that the tax deed be adjudged null and void.

Plaintiff replied and admitted defendant was the original patentee; that Garfield County acquired title to the land through a tax deed; that plaintiff's title to the land was based upon such tax deed; and denied the remainder of the allegations.

The facts were stipulated and we find that on October 5, 1914, patent was issued by the United States to Paul Guderjahn, the answering defendant herein; that on November 20, 1925, he sold the lands under contract to Charles Sindelar subject to a "one-tenth royalty in any oil discovered upon said land;" that on November 20, 1925, Guderjahn conveyed the land to Charles Sindelar, which deed contained this provision, "the grantor also reserves a one-tenth royalty in all oil discovered upon the above-described premises;" that on April 2, 1934, Sindelar and his wife mortgaged the premises to the Land Bank Commissioner; that thereafter and on January 13, 1939, Sindelar and his wife, conveyed the premises by deed to the Federal Farm Mortgage Corporation, subject to all encumbrances now of record affecting the title to the property. The Land Bank Commissioner mortgage was satisfied by the Federal Farm Mortgage Corpo-

ration on June 27, 1939. On November 20, 1940, the Federal Farm Mortgage Corporation by quitclaim deed conveyed all its interest in the land to William J. Pluhar, plaintiff herein, reserving fifty percent of all minerals, oil and gas in or under said land except coal, coal having been reserved by the United States in the original patent. On November 11, 1951, the Federal Farm Mortgage Corporation executed a quitclaim deed to all of the minerals to William J. Pluhar, same person as William James Pluhar.

From the stipulated facts it is apparent that the plaintiff has record title to the land described in his complaint through mesne conveyances going back to the original patentee from the United States; further that such record title was subject to the royalty reservation made by the answering defendant.

Plaintiff filed his complaint on May 23, 1952, and by the allegations contained in his reply attempted to base his title upon a tax deed taken by Garfield County.

The facts with regard to the tax deed proceedings are that Garfield County obtained a tax deed on January 31, 1941, based upon proceedings which were admittedly defective, in particular disclosing that the proof of service filed in the office of the county clerk makes no reference to occupancy. Lowery v. Garfield County, 122 Mont. 571, 208 Pac. (2d) 478.

On February 3, 1941, the county entered into a contract to sell the property to William Pluhar, father of the plaintiff, who assigned the contract to the plaintiff on October 13, 1942, and on November 5, 1952, the county executed a quitclaim deed of the premises to the plaintiff.

Plaintiff has based his case upon a claim of adverse possession under color of title, the void tax deed, for the prescriptive period. It is apparent however that on November 20, 1940, plaintiff obtained a quitclaim deed to the premises from the previous owner, the Federal Farm Mortgage Corporation, subject to a reservation of fifty percent of all minerals in the grantor, which plaintiff filed for record on December 9, 1940. It was not until November 22, 1940, that the application for tax deed

by the county was noticed; at that time plaintiff was the actual owner of the property.

It has long been held that one cannot hold title adversely to himself. Lowry v. Carrier, 55 Mont. 392, 396-398, 177 Pac. 756; Dahlberg v. Lannen, 84 Mont. 68, 81, 274 Pac. 151; Peavey v. Moran, 256 Mass. 311, 152 N.E. 360, 362; 2 C.J.S. Adverse Possession section 6, page 517; 2 Cal. Jur. (2d) Adverse Possession, section 16, page 515.

In the Lowry case, supra [55 Mont. 392, 177 Pac. 759], plaintiff brought a suit to quiet title to certain irrigation ditches, basing her cause of action on two counts: (1) Title by prescription; and (2) Unbroken chain of title from the United States. The district court found plaintiff had made out her case on both theories. Upon appeal to this court, Mr. Justice Holloway speaking for the court said:

"While it was permissible for plaintiffs in their complaint to present their claim to these ditches in different counts, each founded upon a different theory to meet the exigencies of the case as disclosed by the evidence (Blankenship v. Decker, 34 Mont. 292, 85 Pac. 1035), it was not possible for them in this instance to maintain both theories, for they are incompatible; yet the court finds that both theories are sustained by the evidence. If lateral No. 3 and the sublateral were constructed by Johnson and Madson over public land, their right to the ditches was confirmed by the government which owned the land; and, in the absence of abandonment, they could not thereafter acquire the same character of title by adverse user.

"*Use by a party of his own property is never adverse in the sense that the term 'adverse' is employed in the law of prescription. Adverse possession is the open and hostile possession of land under a claim of title to the exclusion of the true owner.*' (1 Words and Phrases, Second Series, 136; Scallon v. Manhattan Ry. Co., 185 N.Y. 359, 78 N.E. 284, 7 Ann. Cas. 168.

"We are confronted by a decree founded upon theories altogether inconsistent; but this is a suit in equity. *The evidence in its entirety is before us, and we are authorized by Section*

*6253, Revised Codes [1907, now R.C.M. 1947, section 93-216],
to dispose of the cause on its merits.* Pew v. Johnson, 35 Mont.
173, 88 Pac. 770, 119 Am. St. Rep. 852. If the theory of ad-
verse user be adopted, a new trial must be ordered (1) for the
error of the court in excluding evidence of the extent of the
use; and (2) because the evidence is insufficient to sustain the
finding that plaintiff Lowry acquired a one-half interest. But
the evidence is sufficient to sustain the findings to the effect
that title to lateral No. 3 and the sublateral was acquired by
virtue of the facts that those ditches were constructed by John-
son and Madson over public land and that plaintiff Lowry suc-
ceeded to their rights, and we adopt this theory of the case. It
involves the elimination from finding No. 7 of all reference to
the adverse use of these ditches by plaintiff Lowry and her
predecessors in interest.'' Emphasis supplied.

In 2 Cal. Jur. (2d), Adverse Possession, section 16, page
515, the author states: ''No title can be acquired by adverse
possession, however, by a party holding land in hostility to him-
self; in other words, a person holding in one capacity cannot
hold adversely to himself claiming in another capacity.''

The facts set forth in this opinion were stipulated and no ob-
jection made to their sufficiency or correctness. Therefore
this court is in as advantageous a position to do justice in the
cause as was the trial court. No presumption obtains in such a
case as to the correctness of the trial court's decision since this
court is empowered to completely review the record, R.C.M.
1947, section 93-216, and the record reviewed presents no con-
flict in the evidence for applying the presumption. Bielen-
berg v. Eyre, 44 Mont. 397, 400, 120 Pac. 243.

What was the status of the title on November 20, 1940?
It is apparent that there was outstanding a ten per cent roy-
alty reservation in Paul Guderjahn, a single man, and a fifty
percent mineral reservation in the Federal Farm Mortgage
Corporation.

On November 20, 1940, plaintiff took title to the premises
subject to all prior recordations or conveyances concerning the

land in question. R.C.M. 1947, section 73-201. Recordation of a royalty assignment falls within the definition of a conveyance of real property, R.C.M. 1947, section 73-203; Aronow v. Bishop, 107 Mont. 317, 325, 86 Pac. (2d) 644, and operates as constructive notice to all subsequent purchasers and mortgagees of the property. Aronow v. Bishop, supra, 107 Mont. at page 328, 86 Pac. (2d) at page 647. In the instant case, although no royalty assignment was involved, a reservation of royalty appeared on the face of the prior conveyances from Guderjahn to the Sindelars. These conveyances were in plaintiff's chain of title.

As stated by Professor Pomeroy, Equity Jurisprudence, Vol. 2, section 626, page 711 (5th ed.), ''Wherever a purchaser holds under a conveyance, and is obliged to make out his title through that deed, or through a series of prior deeds, the general rule is firmly established that he has constructive notice of every matter connected with or affecting the estate which appears, either by description of parties, by recital, by reference, or otherwise, on the face of any deed which forms an essential link in the chain of instruments through which he must derive his title. The reasons for this doctrine are obvious and most convincing; in fact, there could be no security in land ownership unless it were strictly enforced. The right of such a purchaser is, under our system of conveyancing, confined to the instruments which constitute his chain of title, which are his title deeds, and everything appearing in those instruments and forming a legitimate part thereof is a necessary element of his title. The *rationale* of the rule is equally clear and certain. Any description, recital of fact, reference to other documents, puts the purchaser upon an inquiry; he is bound to follow up this inquiry step by step, from one discovery to another, from one instrument to another, until the whole series of title deeds is exhausted, and a complete knowledge of all the matters referred to in their provisions and affecting the estate is obtained. Being thus put upon the inquiry, he is conclusively presumed to have prosecuted it until its final result, and with

ultimate success. The purchaser's ignorance that a particular instrument forming a link in his chain of title was in existence, and his consequent failure to examine it, would not in the slightest affect the operation of the rule. An imperative duty is laid upon him to ascertain *all* the instruments which constitute essential parts of his title, and to inform himself of all that they contain.'' Quoted with approval by this court in Piccolo v. Tanaka, 78 Mont. 445, 451, 253 Pac. 890.

For the foregoing reasons, the judgment of the trial court must be modified by: (1) Quieting title in the plaintiff by reason of the mesne conveyances rather than by adverse possession; (2) Adjudging plaintiff's title to the land subject to the ten percent royalty reservation owned by defendant.

The cause is remanded to the district court with directions to proceed in a manner not inconsistent with this opinion.

MR. JUSTICES CASTLES, ANGSTMAN and ADAIR, and THE HONORABLE JAMES T. SHEA, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, concur.